No. 23-11452

In the

# United States Court of Appeals
## for the Eleventh Circuit

DeShawn Gervin,

*Plaintiff-Appellee*,

v.

Pamela Florence, *et al.*,

*Defendant-Appellants*.

On Appeal from the United States District Court for the
Middle District of Georgia, Albany Division.
No. 1:21-CV-00067 — Leslie A. Gardner, *Judge*

## BRIEF OF DEFENDANT-APPELLANTS

Loretta L. Pinkston-Pope
  *Deputy Attorney General*
Laura Lones
  *Sr. Asst. Attorney General*

Christopher M. Carr
  *Attorney General of Georgia*
Stephen J. Petrany
  *Solicitor General*
Paul R. Draper
  *Asst. Attorney General*

Office of the Georgia
  Attorney General
40 Capitol Square, SW
Atlanta, Georgia 30334
(404) 458-3602
pdraper@law.ga.gov

*Counsel for Defendant-Appellants*

*Gervin v. Florence*, No. 23-11452

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

I hereby certify that the following persons and entities may have an interest in the outcome of this case:

Carr, Christopher M, Attorney General, Counsel for Defendant-Appellants;

Cowart, Annette M., Former Senior Assistant Attorney General, Former Counsel for Defendant-Appellants;

Cusimano, Angela E., Assistant Attorney General, Counsel for Defendant-Appellants;

Draper, Paul R., Assistant Attorney General, Counsel for Defendant-Appellants;

Florence, Pamela, Defendant-Appellant;

Funt, Samantha J., Counsel for Plaintiff-Appellee;

Gardner, Leslie A., Judge, U.S. District Court for the Middle District of Georgia;

Gervin, DeShawn, Plaintiff-Appellee;

Greenamyre, Zack, Counsel for Plaintiff-Appellee;

Hampton, Hoke, Defendant;

Lones, Laura L., Senior Assistant Attorney General, Counsel for Defendant-Appellants;

Milton, Tandria, Defendant-Appellant;

Mitchell Shapiro Greenamyre & Funt, LLP, Counsel for Plaintiff-Appellee;

*Gervin v. Florence*, No. 23-11452

Pacious, Kathleen M., Former Deputy Attorney General, Former
    Counsel for Defendant-Appellants;

Petrany, Stephen J., Solicitor General, Counsel for Defendant-
    Appellants;

Pinkston-Pope, Loretta L., Deputy Attorney General, Counsel for
    Defendant-Appellants;

Teaster, Susan E., Former Senior Assistant Attorney General,
    Former Counsel for Defendant-Appellants.

/s/ *Paul R. Draper*
Paul R. Draper

## STATEMENT REGARDING ORAL ARGUMENT

The Defendant-Appellants request oral argument in this case. The district court's order denied qualified immunity and held that probation officers who initiate revocation proceedings may be liable under § 1983 based on a novel theory of law. That order raises important issues that warrant oral argument.

# TABLE OF CONTENTS

**Page**

Statement Regarding Oral Argument ............................................... i

Table of Authorities ........................................................ iii

Jurisdiction ................................................................ viii

Statement of Issues ......................................................... 1

Introduction ................................................................ 2

Statement of the Case ....................................................... 4

    A. Factual Background ................................................. 4

    B. Proceedings Below ................................................. 7

    C. Standard of Review ............................................... 10

Summary of Argument ...................................................... 10

Argument .................................................................. 13

    I. Gervin's malicious prosecution claim fails on its merits because a probation revocation is not a criminal prosecution. ....................................................... 14

        A. The Supreme Court, this Court, and many other circuit courts have long held that revocation proceedings are not part of a criminal prosecution. ............................... 15

        B. As a matter of first principles, probation revocation is not part of a criminal prosecution. ............................... 20

        C. The district court's rationales are not convincing. ....... 29

    II. Alternatively, the officers are entitled to qualified immunity. ........................................................... 35

Conclusion ................................................................. 40

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bahrampour v. Lampert,*
  356 F.3d 969 (9th Cir. 2004) ..................................................... 37

*Beck v. City of Muskogee Police Dep't,*
  195 F.3d 553 (10th Cir. 1999) ................................................... 29

*Betterman v. Montana,*
  578 U.S. 437 (2016) ................................................................. 20

*Black v. Romano,*
  471 U.S. 606 (1985) ................................................................. 17

*Bronowicz v. Allegheny County,*
  804 F.3d 338 (3d Cir. 2015)...................................................... 29

*Burns v. United States,*
  287 U.S. 216 (1932) ...........................................................25, 28

*Cardi v. Supermarket Gen. Corp.,*
  453 F. Supp. 633 (E.D.N.Y. 1978)............................................. 35

*Christy v. State,*
  134 Ga. App. 504 (1975).......................................................... 27

*Crosby v. Monroe County,*
  394 F.3d 1328 (11th Cir. 2004) ...........................................12, 39

*Dettelis v. Sharbaugh,*
  919 F.3d 161 (2d Cir. 2019)...................................................... 29

*Escoe v. Zerbst,*
  295 U.S. 490 (1935) ...........................................................25, 33

*Fort Wayne Books, Inc. v. Indiana,*
  489 U.S. 46 (1989) ................................................................... 20

*Gagnon v. Scarpelli,
      411 U.S. 778 (1973) .................................................................passim

Gilmore v. Hodges,
      738 F.3d 266 (11th Cir. 2013) ................................................... 39

Gogel v. Kia Motors Mnfg. of Ga., Inc.,
      967 F.3d 1121 (11th Cir. 2020) ................................................. 13

Goings v. Ct. Servs. & Offender Supervision Agency,
      786 F. Supp. 2d 48 (D.D.C. 2011)............................................. 25

Goodman v. Kimbrough,
      718 F.3d 1325 (11th Cir. 2013) ................................................. 32

Greenholtz v. Inmates of Neb. Penal & Corr. Complex,
      442 U.S. 1 (1979) ...................................................................... 25

Gregory v. Wyse,
      512 F.2d 378 (10th Cir. 1975) ................................................... 24

Griffin v. Wisconsin,
      483 U.S. 868 (1987) ............................................................24, 25

Grissom v. Roberts,
      902 F.3d 1162 (10th Cir. 2018) ................................................. 37

Johnson v. City of Detroit,
      446 F.3d 614 (6th Cir. 2006) ..................................................... 29

Laskar v. Hurd,
      972 F.3d 1278 (11th Cir. 2020) ................................................. 31

Manuel v. City of Joliet,
      580 U.S. 357 (2017) ............................................................14, 30

Morgan v. Wainwright,
      676 F.2d 476 (11th Cir. 1982) ..................................17, 27, 28, 37

*Morrissey v. Brewer*,
  408 U.S. 471 (1972) ..........................................................*passim*

*Muhammed v. Close*,
  540 U.S. 749 (2004) ................................................................ 34

*Mullenix v. Luna*,
  577 U.S. 7 (2015) ................................................................36, 39

*Occhino v. United States*,
  686 F.2d 1302 (8th Cir. 1982) ................................................ 29

*United States ex rel. Simmons v. Zibilich*,
  542 F.2d 259 (5th Cir. 1976) .................................................. 13

*Smith v. Mitchell*,
  856 F. App'x 248 (11th Cir. 2021) ...................................*passim*

*Smith v. Owens*,
  848 F.3d 975 (11th Cir. 2017) ................................................ 10

*Standlee v. Rhay*,
  557 F.2d 1303 (9th Cir. 1977) ................................................ 23

*Thompson v. Clark*,
  142 S. Ct. 1332 (2022) .......................................................*passim*

*Thompson v. Reivitz*,
  746 F.2d 397 (7th Cir. 1984) .................................................. 18

*United States v. Brennick*,
  337 F.3d 107 (1st Cir. 2003).................................................. 23

*United States v. Brown*,
  899 F.2d 189 (2d Cir. 1990)..................................................... 17

*United States v. Caraballo-Martinez*,
  866 F.3d 1233 (11th Cir. 2017) .............................................. 19

*United States v. Cunningham,*
607 F.3d 1264 (11th Cir. 2010) ...........................................17, 37

*United States v. Dennis,*
26 F.4th 922 (11th Cir. 2022)...................................19, 26, 27, 37

*United States v. Evers,*
534 F.2d 1186 (5th Cir. 1976) ................................................... 28

*United States v. Francischine,*
512 F.2d 827 (5th Cir. 1975) .................................................... 26

*United States v. Haymond,*
139 S. Ct. 2369 (2019) ............................................................. 20

*United States v. Hilger,*
728 F.3d 947 (9th Cir. 2013) .................................................... 18

*United States v. Hulen,*
879 F.3d 1015 (9th Cir. 2018) .................................................. 26

*United States v. Knights,*
534 U.S. 112 (2001) .................................................................. 26

*United States v. Miller,*
797 F.2d 336 (6th Cir. 1986) .................................................... 18

*United States v. Palomino Garcia,*
606 F.3d 1317 (11th Cir. 2010) ................................................ 21

*United States v. Reese,*
775 F.3d 1327 (11th Cir. 2015) ...........................................17, 19

*United States v. Stehl,*
665 F.2d 58 (4th Cir. 1981) ...................................................... 17

*United States v. Strada,*
503 F.2d 1081 (8th Cir. 1974) .................................................. 18

*United States v. Taylor*,
　931 F.2d 842 (11th Cir. 1991) .......................................17, 34, 37

*United States v. Whitney*,
　649 F.2d 296 (5th Cir. Unit B 1981) ..............................23, 24, 37

*United States v. Woods*,
　127 F.3d 990 (11th Cir. 1997) ..............................................17, 37

*Wade v. Daniels*,
　36 F.4th 1318 (11th Cir. 2022)..............................................36, 38

*Williams v. Aguirre*,
　965 F.3d 1147 (11th Cir. 2020) ....................................10, 14, 15

**Statutes**

42 U.S.C. § 1983.............................................................................. 14

2015 Ga. Laws 422........................................................................... 5

O.C.G.A. § 42-3-3 ............................................................................ 5

**Other Authorities**

*Black's Law Dictionary* (1st ed. 1891)........................................... 22

Erin E. McMannon, *The Demise of § 1983 Malicious*
　*Prosecution: Separating Tort Law from the Fourth*
　*Amendment*, 94 Notre Dame L. Rev. 1479 (2019) .................... 21

John Bouvier, *A Law Dictionary* (Revised 6th ed. 1856).............. 22

Martin L. Newell, *Treatise on the Law of Malicious*
　*Prosecution, False Imprisonment, and the Abuse of*
　*the Legal Process* § 24 (1892) .................................................... 21

Noah Webster, *An American Dictionary of the English*
　*Language* (1828)......................................................................... 21

U.S.S.G. Ch. 7, Pt. A, § 3 ............................................................. 23

## JURISDICTION

Plaintiff DeShawn Gervin's malicious prosecution claim arises under the laws of the United States. *See* 42 U.S.C. § 1983; U.S. Const. amend. IV.  The district court exercised subject matter jurisdiction under 28 U.S.C. § 1331.

On March 31, 2023, the district court granted in part and denied in part the defendants' motion for summary judgment. Doc. 18.  Twenty-eight days later, on April 28, Defendants Pamela Florence and Tandria Milton timely filed a notice of appeal from the district court's order "to the extent [it] denied them qualified immunity from Plaintiff's 42 U.S.C. § 1983 malicious prosecution claim."  Doc. 19.

Although an order denying summary judgment is generally not immediately appealable, "a district court's denial of a claim of qualified immunity, to the extent that it turns on an issue of law, is an appealable 'final decision' … notwithstanding the absence of a final judgment." *Mitchell v. Forsyth*, 472 U.S. 511, 530 (1985). This Court therefore has appellate jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF ISSUES

1.    Probation officers Pamela Florence and Tandria Milton sought to revoke DeShawn Gervin's probation, mistakenly believing he had violated a condition of his release.  Was the attempt to revoke Gervin's probation a "criminal prosecution," such that Gervin can assert a malicious prosecution claim against the officers?

2.    If the officers' actions were unconstitutional, was that clearly established at the time of their actions?

# INTRODUCTION

The question in this appeal is whether probation revocation proceedings are part of a "criminal prosecution," such that they can support a malicious prosecution claim under § 1983. For many reasons, they are not. The district court held otherwise—and indeed, held that two probation officers could be liable for damages for mistakenly issuing a warrant for the arrest of probationer (and Appellee) DeShawn Gervin. That holding is legally unsupportable, and this Court should reverse.

Gervin was out on probation after a stint in jail for attempted burglary. Because of a special condition imposed on his probation—requiring him to remain outside of the judicial circuit in which he was sentenced—he was not able to comply with the general conditions of probation that Georgia typically imposes on probationers, including a regular reporting requirement. Accordingly, the sentencing court did not impose those ordinary conditions. Probation officers Pamela Florence and Tandria Milton (Appellants here), unaware that Gervin was not subject to the regular reporting requirements, secured a warrant for his arrest and sought to revoke his probation for "failing" to report. Ultimately, Gervin was released when it became clear the officers had made a mistake.

But that was not the end of the matter:  Gervin filed a claim against the officers for malicious prosecution under 42 U.S.C. § 1983.  And, remarkably, at summary judgment, the district court ruled against the officers, holding that Gervin had not only stated a claim but also could overcome qualified immunity.  *See* Doc. 18.

Although the officers erred when they tried to revoke Gervin's probation, they did not engage in malicious prosecution.  That's true for a simple reason:  malicious prosecution requires a criminal *prosecution*, and "revocation of parole is *not* part of a criminal prosecution."  *Morrissey v. Brewer*, 408 U.S. 471, 480 (1972) (emphasis added).   So the Supreme Court has held; so this Court has held; so have numerous other courts of appeals held, in numerous cases.  And even if this Court had to examine the matter from first principles, it is clear both historically and today that a revocation proceeding is *not* a criminal prosecution.  A criminal prosecution, at bottom, is an attempt by the state to incarcerate a (presumed innocent) citizen on the grounds that he committed a crime.  A revocation proceeding, by contrast, merely considers whether a *convict* has violated the terms of his contract with the state.  The two are not comparable.

3

But even assuming there were some overlap between revocations and prosecutions for the purposes of a malicious prosecution claim, the officers would still be entitled to qualified immunity, because that proposition is not clearly established. The overwhelming weight of authority, in fact, says precisely the opposite. And this Court has not "specifically addressed" the question. *Smith v. Mitchell*, 856 F. App'x 248, 250 (11th Cir. 2021). So the officers are entitled to qualified immunity if nothing else, and the Court should reverse the decision of the district court.

## STATEMENT OF THE CASE

Gervin filed a § 1983 action, asserting a Fourth Amendment claim against Florence and Milton for malicious prosecution. Doc. 1 at 1–2, 7–10. Following discovery, the officers filed a motion for summary judgment, Doc. 15, which the district court denied as to Gervin's malicious prosecution claim, Doc. 18 at 9–17, 21.

### A. Factual Background

In 2012, DeShawn Gervin pleaded guilty to attempted burglary. Doc. 15-3 at 4; Doc. 15-11 at 10. The Superior Court of Mitchell County sentenced him to one year in jail along with nine

years of probation. Doc. 15-12 at 1. The court imposed one (and only one) condition on Gervin's probation: he was not allowed to return to the South Georgia Judicial Circuit, which includes Mitchell County along with the counties of Baker, Calhoun, Decatur, and Grady. Doc. 15-11 at 17; Doc. 15-12 at 1. Although the court did not say so explicitly at Gervin's plea hearing, *see* Doc. 15-11, it declined to apply the "general conditions of probation" imposed on most probationers, including requirements to report to a probation officer on a regular basis and obtain permission from the probation officer before changing residences, *see* Doc. 15-12 at 1. Upon his release from jail, Gervin travelled immediately to Missouri, but he eventually settled in North Carolina (where he would commit additional crimes). Doc. 15-3 at 3–5.

Pamela Florence is a probation officer with the Georgia Department of Community Supervision, the agency charged with overseeing probationers. Doc. 15-4 at 5; Doc. 15-5 at 1; O.C.G.A. § 42-3-3.[1] She was assigned to supervise Gervin during his

---

[1] Until 2015, Florence was a probation officer with the Georgia Department of Corrections, which was responsible for administering the probation system until that responsibility was transferred to the Department of Community Supervision. *See* Doc. 15-4 at 5; Doc. 15-5 at 1; 2015 Ga. Laws 422, 425.

probation period.  *See* Doc. 15-4 at 10.  In April 2012, Florence realized that the Department had no information on Gervin's whereabouts or contact information.  *Id.* at 9–10.  She learned from the Mitchell County Sheriff's Office that he had been released from jail three months earlier, and then, through conversations with Gervin's family, she discovered that he was incarcerated in North Carolina for breaking and entering and larceny.  *Id.*; Doc. 15-3 at 5.

Florence did not have immediate access to the transcript from Gervin's plea hearing, so she was unsure about the exact terms of his probation.  *See* Doc. 15-4 at 11–12 (noting that Gervin's probation conditions were "unusual" because probation generally entails regular reports with a supervising officer).  But, because Gervin did not report to Florence's office for the normal intake that probationers undergo at the beginning of their probationary period, she secured a warrant for his arrest, indicating that he had "absconded from probation supervision" and "his whereabouts [were] unknown."  Doc. 15-6 at 1; Doc. 15-4 at 11.

In 2019—after Gervin had served yet another prison term in North Carolina for robbery and kidnapping—North Carolina law enforcement arrested Gervin based on Florence's warrant and extradited him to Georgia.  Gervin was arrested based on

Florence's warrant and returned to Mitchell County. Doc. 15-3 at 5–6. Upon his return, Tandria Milton, another probation officer with the Department of Community Supervision, prepared and submitted a petition to revoke Gervin's probation, again based on his supposed failure to report with the Department. *See* Doc. 15-9 at 4–5; Doc. 15-10.

The superior court held a hearing on the petition soon after. *See* Doc. 15-13 at 1. Milton testified at the hearing, noting that even if Gervin was unable to report in person due to his probation condition, he could have contacted the Department of Community Supervision over the phone. *See id.* at 5. The court, however, declined to revoke Gervin's probation. *Id.* at 7–8. Neither the State nor Gervin had tendered any evidence as to what conditions were actually imposed on Gervin's probation, so Gervin prevailed by default because the State bore the burden to justify revocation. *Id.* Gervin was released the same day. *Id.* at 8; Doc. 15-3 at 6. His probation period ultimately ended in January 2021. *See* Doc. 15-12 at 1; Doc. 15-3 at 6–7.

### B. Proceedings Below

Gervin filed this § 1983 action in April 2021, a few months after his probation ended. *See* Doc. 1. His complaint alleged that Florence and Milton falsely accused him of violating the terms of

his probation, causing his arrest and detention in violation of the Fourth, Eighth, and Fourteenth Amendments. *See id.* at 1–2.[2] He requested nominal, compensatory, special, and punitive damages based on his alleged "loss of liberty, humiliation, emotional distress, and physical pain and suffering." *Id.* at 6, 9–10.

The officers moved for summary judgment, noting that Gervin's claim was really one for malicious prosecution. Doc. 15-1 at 5. And a malicious prosecution claim, they explained, requires a criminal prosecution. *Id.* But a probation revocation is *not* a criminal prosecution, so Gervin's claim must fail. *Id.* at 5–7. Alternatively, they argued, they were entitled to qualified immunity because no binding decision has ever held that a probation revocation is in fact a criminal prosecution. *Id.* at 10–11. Finally, they argued that, to the extent Gervin separately

---

[2] Gervin's complaint also named Hoke Hampton, another probation officer, as a defendant. *See* Doc. 1 at 3. Gervin initially alleged that Hampton likewise violated his constitutional rights when he had Gervin's probation tolled pending his revocation hearing. *See id.* at 5; Doc. 15-8. But the defendants' motion for summary judgment noted that Hampton's actions caused Gervin no real harm, as his probation was ultimately reinstated and completed on schedule. *See* 15-1 at 7–8. Gervin agreed, *see* Doc. 16 at 2 n.3, and the district court granted summary judgment on the claims against Hampton, *see* Doc. 18 at 7.

alleged violations of the Eighth and Fourteenth Amendments, those claims failed because (1) the Eighth Amendment covers challenges to conditions of confinement, not the fact of confinement, and (2) the cases Gervin cited to support his Fourteenth Amendment claim were factually distinct and could not overcome qualified immunity. Doc. 17 at 5–7.

The district court agreed that Gervin's Fourth Amendment claim is an action for malicious prosecution. Doc. 18 at 9. And it acknowledged that there is no "binding precedent" on whether a probation revocation is a criminal proceeding "for purposes of a malicious prosecution claim." *Id.* at 11. But rather than grant qualified immunity on that basis, it decided that the lack of binding precedent left it free to answer the question in the first instance. *See id.* And in the district court's view, a probation revocation actually *is* a criminal prosecution. *See id.* at 11–12. The court rejected the overwhelming case law to the contrary and neglected to explain how its conclusion squares with the history of malicious prosecution as a common law tort, holding with little explanation that the "protections afforded by the Fourth Amendment against unlawful search and seizure appear to be implicated." *Id.* at 11 n.4.

9

Accordingly, the court denied summary judgment on Gervin's Fourth Amendment malicious prosecution claim. *Id.* at 15, 17. The court did, however, agree that summary judgment was warranted for Gervin's Eighth and Fourteenth Amendment claims. *See id.* at 17–21.

The officers appealed the district court's denial of Gervin's malicious prosecution claim.

### C.  Standard of Review

This Court reviews the district court's denial of summary judgment de novo. *Smith v. Owens*, 848 F.3d 975, 978 (11th Cir. 2017).

## SUMMARY OF ARGUMENT

The district court erred in two significant ways.

*First,* probation revocations are "not part of a criminal prosecution." *Morrissey*, 408 U.S. at 480. That is dispositive, because the common law claim of malicious prosecution *requires* a criminal prosecution, and § 1983 should be interpreted in line with the common law. *See Thompson v. Clark*, 142 S. Ct. 1332, 1336–37 (2022); *Williams v. Aguirre*, 965 F.3d 1147, 1157 (11th Cir. 2020). This is not a difficult question: many courts, including the Supreme Court and this Court, in many different contexts,

10

have held that revocation proceedings are not criminal prosecutions.

Even if one ignored that mountain of precedent, a criminal prosecution still does not include revocation proceedings even as a matter of first principles.  Historically, the term "prosecution" referred specifically to the presentation of criminal charges against a defendant and the litigation of those charges to final judgment, not to proceedings like probation revocations. Prosecutions and revocations, moreover, differ in critical ways. Prosecutions are meant to punish criminal conduct, while revocations are meant to facilitate rehabilitation.  Prosecutions strip defendants of their absolute liberty, while revocations remove only the conditional liberty afforded by probation.  And prosecutions are subject to strict procedural rules, while revocations are flexible and discretionary.

The district court offered no meaningful reason for collapsing the two processes in spite of their differences.  Instead, the court appears to have been persuaded that it would be bad policy if plaintiffs like Gervin do not have access to this particular claim. But that is no substitute for legal analysis, and in any event, it is wrong.  There is little reason to expand malicious prosecution claims under § 1983, and plenty of reason *not* to do so.  Most

importantly, probationers simply do not stand in the same shoes as ordinary citizens: they are convicted criminals relying on the grace of the state to remain outside of prison at all. Expanding malicious prosecution claims into that context makes no sense.

*Second*, even assuming revocations are criminal prosecutions for the purposes of a malicious prosecution claim, the officers are entitled to qualified immunity because that proposition is not clearly established. Just two years ago, this Court acknowledged that it has "not [yet] specifically addressed" the issue. *Smith*, 856 F. App'x at 250. Qualified immunity clearly applies.

The district court reached the opposite conclusion only by inverting the qualified immunity analysis. Instead of granting immunity because there is no on-point case, the district court *denied* qualified immunity on that basis. In doing so, the court effectively reversed the burden of persuasion, demanding that the officers identify a binding decision in their favor. But that is not how qualified immunity works: a government official is "not required to err on the side of caution when it comes to avoiding constitutional violations." *Crosby v. Monroe County*, 394 F.3d 1328, 1334 (11th Cir. 2004) (quotation omitted).

12

Although the Court should simply resolve the legal question in the officers' favor, even if it decided otherwise, the Court should at least reverse on the basis of qualified immunity.

## ARGUMENT

Summary judgment is appropriate where there is no genuine dispute as to any material fact and the defendants are entitled to judgment as a matter of law. *Gogel v. Kia Motors Mnfg. of Ga., Inc.*, 967 F.3d 1121, 1134 (11th Cir. 2020) (en banc). Defendants are entitled to judgment "as a matter of law" if "the law does not recognize a federal cause of action for the facts alleged by the plaintiff," even if those facts are supported by evidence in the record, *United States ex rel. Simmons v. Zibilich*, 542 F.2d 259, 260 n.3 (5th Cir. 1976).

This Court should reverse. Even if the evidence is viewed in Gervin's favor, he cannot establish a claim for malicious prosecution because there was no prosecution here. Even if such a claim were available, that was not clearly established at the time of the officers' actions.

13

**I.    Gervin's malicious prosecution claim fails on its merits because a probation revocation is not a criminal prosecution.**

Section 1983 provides a cause of action against anyone who, under color of law, deprives someone of "rights … secured by the Constitution."  Because the statute creates "a species of federal tort liability," courts generally look "to the elements of the most analogous tort as of 1871 when § 1983 was enacted, so long as doing so is consistent with the values and purposes of the constitutional right at issue."  *Thompson*, 142 S. Ct. at 1336–37 (quotation omitted); *see also Manuel v. City of Joliet*, 580 U.S. 357, 370 (2017).

Here, Gervin claims that the officers violated his Fourth Amendment right to be free from unreasonable seizures when they sought to revoke his probation.  Doc. 1 at 7–10.  He analogizes this claim to the common law tort of malicious prosecution.  *See* Doc. 16 at 7–16.  And federal courts have recognized that a malicious prosecution is actionable through § 1983 where it results in an unreasonable seizure.  *See, e.g.*, *Thompson*, 142 S. Ct. at 1337; *Williams*, 965 F.3d at 1157.

But Gervin's claim fails because he cannot satisfy the elements of that tort.  *See Williams*, 965 F.3d at 1157.  At common law, malicious prosecution required the plaintiff to show (1) that

the defendant "instituted or continued a criminal prosecution against him" and that the prosecution (2) was instituted "with malice and without probable cause," (3) "terminated in his favor," and (4) "caused damage to him." *Id.* (quotation omitted).

Gervin's claim fails at the first step. The Supreme Court has repeatedly held, along with this Court and many other circuit courts, that revocation proceedings are "not part of a criminal prosecution." *Morrissey*, 408 U.S. at 480. Even if the analysis starts from scratch, the history of malicious prosecutions, along with the essential differences between prosecutions and revocations, make clear that errors in probation revocations are not actionable through a malicious prosecution claim. Nothing in the district court's order justified departing from this precedent and concocting a new type of claim.

### A. The Supreme Court, this Court, and many other circuit courts have long held that revocation proceedings are not part of a criminal prosecution.

History and common sense make clear that revocation proceedings are *not* part of a "criminal prosecution." *See infra*, § I.B. But this Court is not writing on a clean slate. Federal courts, including the Supreme Court and the Eleventh Circuit, have already held as much.

15

Start with the Supreme Court.  In *Morrissey v. Brewer*, the Court held that parole revocations need not afford the same process as criminal prosecutions.  408 U.S. at 490.  Reduced procedures are sufficient because "revocation of parole is *not* part of a criminal prosecution." *Id.* at 480 (emphasis added).[3]  The Court continued:

> Parole arises after the end of the criminal prosecution, including imposition of sentence.  Supervision is not directly by the court but by an administrative agency, which is sometimes an arm of the court and sometimes of the executive.  Revocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on observance of special parole restrictions.

*Id. Morrissey* alone all but decides the question here.  Because revocation proceedings are not criminal prosecutions *at all*, they certainly cannot be *malicious* prosecutions.

But the cases do not stop there.  In *Gagnon v. Scarpelli*, 411 U.S. 778, 788–90 (1973), the Supreme Court held that probationers, unlike criminal defendants, are not necessarily entitled to counsel in revocation proceedings.  That was because

---

[3] Just as there is no "difference relevant to the guarantee of due process between the revocation of parole and the revocation of probation," *Gagnon*, 411 U.S. at 782, there is no material difference for purposes of malicious prosecution.

"[p]robation revocation, like parole revocation, is not a stage of a criminal prosecution." *Id.* at 782. And in *Black v. Romano*, 471 U.S. 606, 610–14 (1985), the Court held that due process does not require a court to explain its reasons for revoking probation because such a requirement would undermine "the flexible, informal nature of the revocation hearing, which does not require the full panoply of procedural safeguards associated with a criminal trial."

This Court, too, has held that revoking probation is not equivalent to a criminal prosecution for the purposes of the Confrontation Clause, *United States v. Reese*, 775 F.3d 1327, 1329 (11th Cir. 2015), standards of proof, *United States v. Cunningham*, 607 F.3d 1264, 1267–68 (11th Cir. 2010), the Double Jeopardy Clause, *United States v. Woods*, 127 F.3d 990, 993 (11th Cir. 1997), speedy trial rights, *United States v. Taylor*, 931 F.2d 842, 848 (11th Cir. 1991), and jury trial rights, *Morgan v. Wainwright*, 676 F.2d 476, 481 (11th Cir. 1982). And other circuits have reached the same conclusion in many other contexts.[4]

---

[4] *See, e.g.*, *United States v. Brown*, 899 F.2d 189, 191–92 (2d Cir. 1990) (concluding that the federal insanity defense statute, which permits assertion of the defense against any "prosecution," does not apply to probation revocations); *United States v. Stehl*, 665 F.2d 58, 59 (4th Cir. 1981) (explaining that Federal Rule of Criminal Procedure 11, like the right to a jury trial and the right

The district court did not meaningfully address this substantial body of case law. It said only that these decisions are inapposite because they do not address the *specific* context of a malicious prosecution claim. *See* Doc. 18 at 10–11 & n.4. But that makes little sense. The simple and consistent rationale running through all of these decisions is that the act of revoking probation is *not* a criminal prosecution.

And that rationale applies with equal force in the case of malicious prosecution claims. "The holding of a case," which binds

---

to counsel, "does not fit" revocation proceedings because a probationer's rights "are simply not co-extensive with those enjoyed by a [criminal] defendant"); *United States v. Miller*, 797 F.2d 336, 340–41 (6th Cir. 1986) (holding that the government may prosecute a defendant for conduct that it had unsuccessfully sought to revoke probation for, because "the revocation hearing was not the equivalent of a criminal prosecution," so it did not implicate double jeopardy); *Thompson v. Reivitz*, 746 F.2d 397, 399–400 (7th Cir. 1984) (rejecting a hybrid due-process, double-jeopardy theory that would prohibit seeking to revoke probation twice based on the same violation); *United States v. Strada*, 503 F.2d 1081, 1085 (8th Cir. 1974) (holding that a statute of limitations for prosecuting an offense does not preclude revoking the offender's probation for the same conduct after the limitations period has run); *United States v. Hilger*, 728 F.3d 947, 949 (9th Cir. 2013) (explaining that, unlike in criminal prosecutions, probation may be revoked based on nothing more than the defendant's uncorroborated confession).

lower courts and the same court in later decisions, "comprises both the result of the case and those portions of the opinion necessary to that result." *United States v. Caraballo-Martinez*, 866 F.3d 1233, 1244 (11th Cir. 2017) (quotation omitted). So because the outcome in those cases turned on the fact that revocation "is not part of a criminal prosecution," *Morrissey*, 408 U.S. at 480; *see also United States v. Dennis*, 26 F.4th 922, 927 (11th Cir. 2022), that principle was "necessary to th[e] result" and is binding. *Caraballo-Martinez*, 866 F.3d at 1244.

That is, in fact, how the Eleventh Circuit has treated these precedents in the past. For example, in *United States v. Reese*, this Court considered whether the Confrontation Clause of the Sixth Amendment, which applies only to "criminal prosecutions," covers revocation hearings. 775 F.3d at 1329. To answer that question, the Court applied the holding of *Morrissey v. Brewer* (that "revocation … is not part of a criminal prosecution") even though *Morrissey* reached that conclusion in the course of resolving an entirely different dispute about due process. *See* 408 U.S. at 480; 775 F.3d at 1329. Because the central question in both cases (is a revocation a criminal prosecution?) was the same, *Morrissey* was on point.

19

Simply put, *Morrisey*, *Gagnon*, and this Court's consistent case law are reason enough to hold that revocation proceedings are not part of a criminal prosecution. Thus, they cannot form the basis of a malicious prosecution claim, and the Court should reverse.

### B.   As a matter of first principles, probation revocation is not part of a criminal prosecution.

Even assuming the Court needs to start from a blank slate (and it does not), it is clear that probation revocation is not part of a "criminal prosecution." To understand the scope of "criminal prosecutions" actionable through a malicious prosecution claim, this Court must look to how the tort of malicious prosecution was defined in 1871, when § 1983 was enacted. *See Thompson*, 142 S. Ct. at 1337. And at that time, it was commonly understood that criminal proceedings conclude when a court enters final judgment on criminal charges. *See Betterman v. Montana*, 578 U.S. 437, 442–43 (2016); *Fort Wayne Books, Inc. v. Indiana*, 489 U.S. 46, 54 (1989); *see also United States v. Haymond*, 139 S. Ct. 2369, 2393 (2019) (Alito, J., dissenting) ("[A] 'prosecution' concludes when a court enters final judgment."). So probation revocations, which occur after final judgment, were not covered by the tort of malicious prosecution.

Leading tort law treatises of the nineteenth century reflect this consensus view, explaining that "the weight of authority [was] against the right of action for the unfounded and malicious prosecution of an ordinary civil," as opposed to criminal, "action." Martin L. Newell, *Treatise on the Law of Malicious Prosecution, False Imprisonment, and the Abuse of the Legal Process* § 24 (1892) (quotation omitted).  And that practice was carried through to § 1983.  *See* Erin E. McMannon, *The Demise of § 1983 Malicious Prosecution: Separating Tort Law from the Fourth Amendment*, 94 Notre Dame L. Rev. 1479, 1480 n.8 (2019) ("[M]alicious *criminal* prosecution … is the meaning implicated in the § 1983 'constitutional tort' of malicious prosecution." (emphasis added)).

The historical distinction between revocations and prosecutions is reinforced by nineteenth-century dictionary definitions.  *See United States v. Palomino Garcia*, 606 F.3d 1317, 1331 (11th Cir. 2010) (dictionaries help clarify a term's contemporary meaning).  Webster, for instance, defined "prosecution" as the "institution … of a criminal suit" in which the state would "exhibit[t] formal charges against an offender before a legal tribunal" and "pursu[e] them to *final judgment*."  Noah Webster, *An American Dictionary of the English Language* (1828) (emphasis added).  Revocation proceedings are *always* after final

judgment, and usually well after—they can hardly be part of the
"prosecution" that ends with final judgment. Other dictionaries
are in accord. In *Black's Law Dictionary* (1st ed. 1891),
prosecution is defined as a "criminal action … instituted … for the
purpose of determining the guilt or innocence of a person charged
with a crime." *See also* John Bouvier, *A Law Dictionary* (Revised
6th ed. 1856) (a prosecution is "[t]he means adopted to bring a
supposed offender to justice and punishment by due course of
law."). But again, revocation proceedings do not have anything to
do with guilt or innocence, they are limited to determining
whether a convict has violated the terms of his contractual
agreement with a state.

The district court neglected to address this historical context.
And it failed to identify even a single nineteenth-century case
recognizing a claim for malicious prosecution based on the
revocation of probation. But history is the bedrock of a § 1983 tort
claim, *see Thompson*, 142 S. Ct. at 1337, and history makes clear
that malicious prosecution claims in the late nineteenth century
did not include the kind of claim Gervin presses here.

Distinguishing prosecution and revocation makes intuitive
sense as well, because the two are completely different
proceedings, even today. They have different purposes, follow

different procedures, and implicate different interests. A prosecution is, of course, designed to punish a defendant for criminal conduct and "vindicate the vital interest in enforcement of criminal laws." *United States v. Whitney*, 649 F.2d 296, 297 (5th Cir. Unit B 1981) (quotation omitted). But the purpose of revoking probation "is remedial rather than punitive, since it seeks to protect the welfare of [probationers] and the safety of society." *Standlee v. Rhay*, 557 F.2d 1303, 1306 (9th Cir. 1977) (citing *Gagnon*, 411 U.S. at 783–84; *Morrissey*, 408 U.S. at 477). And because it targets the probationer's failure to comply with the conditions of his parole, rather than the probationer's initial offense, the revocation "is independent of … regular criminal prosecution for the [underlying] crime." *United States v. Brennick*, 337 F.3d 107, 109 (1st Cir. 2003).

The commentary to the federal sentencing guidelines acknowledges this distinction, explaining that the "imposition of an appropriate punishment for any new criminal conduct [is not] the primary goal of a revocation sentence." U.S.S.G. Ch. 7, Pt. A, § 3(b). Instead, revocation aims to remedy the individual's "breach of trust" in "failing to abide by the conditions of the court-ordered supervision." *Id.* Revocation is an administrative mechanism for addressing post-conviction conduct, not a separate punishment for

23

new criminal offenses. *See Morrissey*, 408 U.S. at 480 (noting that probation supervision is conducted "by an administrative agency"); *cf. Gregory v. Wyse*, 512 F.2d 378, 382 (10th Cir. 1975) (explaining that placing prisoners in solitary confinement for breaking prison rules, "though grievous to be sure, [is] not punishment in a criminal sense but is rather an administrative disciplinary sanction imposed on a prisoner for breaking rules of the prison." (quotation omitted)).

"[P]arole and probation revocation proceedings are" thus "fundamentally distinguishable" from proceedings "designed to punish a criminal defendant for violation of a criminal law." *Whitney*, 649 F.2d at 298. One is "essentially criminal," while the other is not, and it would be error to erase that distinction in the context of malicious prosecution claims. *Smith*, 856 F. App'x at 250.

Revocation proceedings and criminal prosecutions also differ in terms of the interests at stake. Of course, revoking probation results in a loss of liberty. *Gagnon*, 411 U.S. at 782. But a probationer "do[es] not enjoy the absolute liberty to which every citizen is entitled." *Griffin v. Wisconsin*, 483 U.S. 868, 874 (1987) (quotation omitted). He retains "only [a] conditional liberty

24

properly dependent on observance of special [probation] restrictions." *Id.* (citation omitted).

A criminal defendant's entitlement to absolute liberty is an inherent feature of our constitutional system, but a probationer's "conditional liberty" is merely a function of "a type of contract" between the state and the probationer. *Goings v. Ct. Servs. & Offender Supervision Agency*, 786 F. Supp. 2d 48, 74 (D.D.C. 2011) (citations omitted). The fact that the state opts to extend the benefits of that contract to a prisoner does not convert probation from a "privilege" to a "right." *Burns v. United States*, 287 U.S. 216, 222 (1932). And in fact, a prisoner is not entitled to probation in the first place. *See Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 11 (1979). "Probation" is "an act of grace." *Escoe v. Zerbst*, 295 U.S. 490, 492–93 (1935).

Because a probationer's liberty interests are less significant, he is not entitled to "the full panoply of rights due a [criminal] defendant." *Morrissey*, 408 U.S. at 480; *see also id.* at 481 (explaining that the appropriate constitutional safeguards depend on the weight of the liberty interests at stake). That is why the Supreme Court has held that a probationer's other Fourth Amendment right—against unreasonable searches—is more

25

limited than an ordinary citizen's. *See United States v. Knights*, 534 U.S. 112, 118–22 (2001).

Thus, although the district court here correctly observed that Gervin "could have faced additional prison time" if he were found to have violated the conditions of his parole, the court erred when it concluded that this possibility means the Fourth Amendment is "implicated" to the same degree as in a criminal prosecution. Doc. 18 at 11 n.4. Even if Gervin's probation were revoked, his additional prison time would not be "punishment for a new crime." *United States v. Hulen*, 879 F.3d 1015, 1019 (9th Cir. 2018). It would be "part of the whole matrix of punishment which ar[ose] out of [Gervin's] original crime, of which [he] has already been convicted after a trial subject to the full panoply of constitutional guarantees." *Id.*

Probation revocation and criminal prosecution differ in form as well. Because of the weighty interests at stake, criminal prosecutions are subject to demanding procedural requirements. *See Gagnon*, 411 U.S. at 789. Revocation proceedings, by contrast, are "more flexible than criminal prosecutions, and it is improper to equate the two." *Dennis*, 26 F.4th at 927 (quotation omitted). Courts, for example, have broad discretion to deny or grant probation. *See United States v. Francischine*, 512 F.2d 827, 829

26

(5th Cir. 1975).  And probation officers have discretion to seek—or not seek—revocation when a probationer violates the conditions of his release.  *See Morrissey*, 408 U.S. at 477–78.  In many jurisdictions, including Georgia, courts deciding whether to revoke probation may "consider evidence … that would not be admissible in an adversary criminal trial."  *Id.* at 489; *see also Christy v. State*, 134 Ga. App. 504, 506 (1975).

This flexibility operates to the benefit of both the state and the probationer.  *See Gagnon*, 411 U.S. at 788–89; *Morgan*, 676 F.2d at 479.  Because a probation officer has discretion as to when and whether to seek revocation, he can choose to "counse[l]" a probationer until the probationer's "violations are serious and continuing" enough "to indicate that the [he] is not adjusting properly and cannot be counted on to avoid antisocial activity." *Morrissey*, 408 U.S. at 479.  But the officer's ability to seek revocation when that moment *does* arrive is crucial to his ability to encourage the probationer's "restoration … into normal society." *Id.* at 478.

That's why federal courts, including the Eleventh Circuit, have repeatedly warned against "impos[ing] … rigid requirements that would threaten the informal nature of probation revocation proceedings." *Dennis*, 26 F.4th at 927 (quoting *Black*, 471 U.S. at

27

611); *see also United States v. Evers*, 534 F.2d 1186, 1188 (5th Cir. 1976) ("A revocation hearing need not be as rigid or as formal as a criminal trial either with respect to notice or specification of charges[.]").  Attempts "to mold revocation proceedings into a criminal trial might distort the probation process and its aims." *Morgan*, 676 F.2d at 479.

Imposing personal liability on probation officers who initiate mistaken revocation proceedings would result in just such a "distort[ion.]"  *Id.*  It would necessarily invite "delays and obstruction" that undermine the flexibility at the core of the probation system.  *Burns*, 287 U.S. at 222.  And the specter of liability would discourage probation officers from seeking revocation—a critical tool for guaranteeing a probationer's proper reintroduction to normal life—even when there is probable cause. State courts, in fact, may be "reluctan[t]" to grant probation at all in such a regime.  *Id.*

That is not the outcome that § 1983 requires.  The remedies offered by that statute are not so broad "as to require that the significant interests in informality, flexibility, and economy … be sacrificed."  *Gagnon*, 411 U.S. at 788.  Nor is there any evidence that Congress, in enacting § 1983, sought to erase the longstanding and important distinctions between criminal

prosecutions and probation revocations. *Cf. Johnson v. City of Detroit*, 446 F.3d 614, 618 (6th Cir. 2006) ("Section 1983 does not alone create … rights."). For these reasons as well, the Court should reverse.

### C. The district court's rationales are not convincing.

The district court failed to identify a single case from the Supreme Court or any circuit court suggesting that revoking probation is equivalent to a criminal prosecution.[5] Instead, the

---

[5] Gervin's summary judgment brief passingly claims that "the significant majority rule" across "the courts of appeal show[s] that baseless probation revocations are cognizable under § 1983." Doc. 16 at 10. But none of the cases he cites actually addressed that question, let alone held that a probation revocation is a criminal prosecution. Instead, those cases resolved the parties' disputes on entirely different grounds. *See, e.g.*, *Dettelis v. Sharbaugh*, 919 F.3d 161, 164–65 (2d Cir. 2019) (holding that defendants were entitled to qualified immunity as to probable cause); *Bronowicz v. Allegheny County*, 804 F.3d 338, 340 (3d Cir. 2015) (holding that a state superior court order vacating a criminal sentence was a favorable termination, so the plaintiff's suit was not barred by *Heck v. Humphrey*, 512 U.S. 477 (1994)); *Occhino v. United States*, 686 F.2d 1302, 1311 (8th Cir. 1982) (holding that the plaintiff's malicious prosecution claim failed because the proceeding terminated unfavorably when his probation was revoked); *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 560 (10th Cir. 1999) (holding that the plaintiff's malicious prosecution claim was barred by *Heck* because his probation revocation had never been invalidated).

district court relied on what boils down to a policy preference for more expansive liability.  That was error.

The district court first insisted that the usual elements of a malicious prosecution claim should be redefined in light of the Fourth Amendment's "values and purposes."  Doc. 18 at 12 (citation omitted).  So "criminal proceedings," on this view, must be understood broadly to include at least some non-criminal proceedings like probation revocation.  *Id.*

To be sure, the Supreme Court has said that "[c]ommon-law principles are meant to guide rather than to control the definition of § 1983 claims."  *Manuel*, 580 U.S. at 370.  But common law principles are nevertheless the presumptive "starting point in specifying the conditions for recovery under § 1983."  *Id.* (citation omitted).  Put another way, the common law is controlling "so long as [it] is consistent with 'the values and purposes of the constitutional right at issue.'"  *Thompson*, 142 S. Ct. at 1337 (quoting *Manuel*, 580 U.S. at 370).  And the district court does not offer a persuasive reason—other than an apparent preference for a rule that maximizes liability under § 1983—for holding that the common law somehow is inconsistent with the "values and purposes of the constitutional right at issue."

30

Instead, the district court relied on the circular notion that § 1983 must apply because there are constitutional rights at stake. In the district court's view, "[e]xcluding probation revocation proceedings from the type of 'criminal proceedings' involved in a malicious prosecution claim under the Fourth Amendment would impermissibly elevate the common law over the Constitution." Doc. 18 at 12 (citation omitted).

That makes little sense. To determine whether § 1983 applies, we look first to the common law. *Thompson*, 142 S. Ct. at 1337. And it is clear beyond peradventure that revocation proceedings did not, historically or today, constitute a "criminal prosecution" as required by the common law. The district court relied on *Laskar v. Hurd*, 972 F.3d 1278 (11th Cir. 2020), for the proposition that "courts cannot 'give priority to the common law over the Fourth Amendment,'" Doc. 18 at 12, but no one is suggesting otherwise. The district court here instead rejected the common law outright, and the Court in *Laskar* did not approve such a move. Indeed, in that case the "the weight of the common law" *agreed* "with relevant constitutional principles." *Id.* at 1292. That is the case here as well: treating a revocation proceeding like a criminal prosecution and providing for Fourth Amendment liability makes no sense for all of the reasons outlined above, *see*

31

*supra* § I.B.  At bottom, probationers are subject to all kinds of restraints on their freedom that (presumed innocent) criminal defendants are not, and bluntly applying the Fourth Amendment without regard for those differences would be hopelessly incongruous.

The district court also took issue with the particular facts of this case (which, at summary judgment, are viewed in the light most favorable to Gervin).  The court declared that Gervin "was arrested pursuant to an arrest warrant that purported to establish probable cause, was brought back to Georgia in police custody, was detained for 104 days, was brought before a court to answer the charges in the petition, and could have faced additional prison time if found guilty of the charges."  Doc. 18 at 11 n.4.  On that basis, and without further explanation, the court held that "the fundamental protections afforded by the Fourth Amendment against unlawful search and seizure appear to be implicated."  *Id.*

But this is another non-sequitur.  Government officials make mistakes, but not all mistakes are subject to § 1983 liability.  Even egregious mistakes are not always actionable.  *See Goodman v. Kimbrough*, 718 F.3d 1325, 1333 (11th Cir. 2013) ("[N]ot every injury is an injury of constitutional magnitude ....").  That is why

32

the Supreme Court has long held that the scope of § 1983 claims must be limited by analogous common law torts—in this case, malicious prosecution. *Thompson*, 142 S. Ct. at 1336–37.

Similarly, the district court seemed to accept Gervin's self-serving predictions of doom: that if his preferred rule does not prevail, "alarming and far-reaching" consequences would follow. Doc. 16 at 9. If probation officers are not made liable under § 1983 for revoking probation, he asserted, then probationers will "be seized and jailed indefinitely for no reason," with no recourse. *Id.* at 9, 13–14; *see also* Doc. 18 at 11 n.4.

Setting aside the unserious nature of that prediction—what probation officer wants to jail a probationer for no reason?—this sky-is-falling rhetoric ignores the procedural guarantees and causes of action already available to probationers.[6] Although a revocation proceeding is not criminal and so probationers are not entitled to the "full panoply of rights due a defendant," they are guaranteed some minimal level of due process. *Morrissey*, 408 U.S. at 480–90. They must, for example, receive notice of alleged violations, a preliminary hearing before an "independent

---

[6] Also, a state *could*, at the outset, deny probation altogether, which takes quite a bit of sting out of even the fanciful parade of horribles that Gervin asserted below. *See Escoe*, 295 U.S. at 492 ("Probation" is "an act of grace.").

decisionmaker" to determine probable cause, a final hearing to determine whether revocation is warranted, and the opportunity to speak and introduce evidence at these hearings. *Id.* at 485–89. And probation may not be revoked based on hearsay evidence that lacks "indicia of reliability." *Taylor*, 931 F.2d at 847. These "informal procedural guarantees" ensure that a probationer is "treat[ed] … with basic fairness," rendering the heavy hand of liability for malicious prosecution unnecessary. *Morrissey*, 408 U.S. at 483–84.[7]

The district court's rule, on the other hand, has obvious shortcomings. Because it would expose probation officers to liability for attempting to revoke someone's probation, it may discourage officers from seeking revocation even in arguably meritorious cases. That's bad for the public *and* the probationer. *See Gagnon*, 411 U.S. at 783–85 (explaining that the probation system, including the probation officer's ability to revoke parole

---

[7] And of course, probationers can seek relief through habeas, which is designed precisely for situations involving detention without process. *See Muhammed v. Close*, 540 U.S. 749, 750 (2004) ("Challenges to the validity of any confinement or to particulars affecting its duration are the province of habeas corpus," not "a § 1983 action."); *Gagnon*, 411 U.S. at 791 (holding that a detained probationer is "entitled to a writ of habeas corpus" if he is not timely provided a revocation hearing).

when appropriate, is meant to facilitate a probationer's rehabilitation); *cf. Cardi v. Supermarket Gen. Corp.*, 453 F. Supp. 633, 634 (E.D.N.Y. 1978) ("Initiation of meritorious criminal prosecutions should not be discouraged," and such litigation should "be protected against claims of malicious prosecution."). Indeed, state legislatures and courts might be less willing to *grant* probation if they come to believe it is too hard to effectively administer.

In sum, the district court cast aside the ordinary analysis, cast aside numerous on-point precedents, and provided no analysis of its own. Its argument was, essentially, the *ipse dixit* that there *should* be a malicious prosecution claim in these circumstances. But that is not a basis for expanding the reach of § 1983 beyond its historical bounds. The Court should hold that malicious prosecution claims under § 1983 do not apply to revocation proceedings because such proceedings are not part of a "criminal prosecution."

## II. Alternatively, the officers are entitled to qualified immunity.

"The doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established statutory or constitutional rights of which a

35

reasonable person would have known." *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (quotation omitted). A right is clearly established only if "(1) a case with facts materially similar has been decided by the United States Supreme Court, the Eleventh Circuit, or the [Georgia Supreme Court] before the challenged conduct; (2) a broader, clearly established principle controls the facts of the situation; or (3) the conduct so obviously violates the constitution that prior case law is unnecessary." *Wade v. Daniels*, 36 F.4th 1318, 1323 (11th Cir. 2022).

The burden is on Gervin, as the plaintiff, to show that his right was clearly established. *Id.* at 1334. And because qualified immunity is a "specific" analysis, he must find cases addressing the "*particular* conduct" at issue here. *Mullenix*, 577 U.S. at 12 (citations omitted). "Such specificity is especially important in the Fourth Amendment context, where … it is sometimes difficult for an officer to determine how the relevant legal doctrine … will apply to the factual situation the officer controls." *Id.* (quotation omitted and alteration adopted).

So unless Gervin identifies a binding decision squarely holding that probation revocations are criminal proceedings for the purposes of a § 1983 malicious prosecution claim, he loses. But there is no such case.

To the contrary, every time this Court has addressed the issue, it has held that the revocation of probation is not a criminal prosecution.  *See supra* I.A.  As has the Supreme Court.  *Id.*  That's true for the Fifth Amendment, *see Whitney*, 649 F.2d at 298; *Dennis*, 26 F.4th at 927; *Woods*, 127 F.3d at 991–93, the Sixth Amendment, *Cunningham*, 607 F.3d at 1267–68; *Taylor*, 931 F.2d at 848, and the Fourteenth Amendment, *see Morrissey*, 408 U.S. at 480; *Gagnon*, 411 U.S. at 781; *Morgan*, 676 F.2d at 478–80.  With prior decisions so uniformly against him, Gervin cannot credibly argue that the law is clearly established in his favor.

And just two years ago, in *Smith v. Mitchell*, this Court squarely rejected the exact argument that Gervin presses here.  A probation revocation, *Smith* said, cannot be the basis for a § 1983 malicious prosecution claim because it "is not a 'criminal prosecution.'"  856 F. App'x at 250.  True, *Smith* was an unpublished decision.  But an unpublished decision, while it does not clearly establish law, "can be quite relevant in showing that the law was *not* clearly established."  *Grissom v. Roberts*, 902 F.3d 1162, 1168 (10th Cir. 2018); *see also Bahrampour v. Lampert*, 356 F.3d 969, 977 (9th Cir. 2004) (explaining that a § 1983 defendant "properly relied on unpublished opinions, despite their lack of binding precedential effect").

37

At the very least, because this Court has never held in a published decision that a probation revocation is a criminal prosecution actionable through § 1983, the law on that point cannot be clearly established, and qualified immunity is warranted. *See Smith*, 856 F. App'x at 250 (noting that the Eleventh Circuit has not "specifically addressed" the question).

The district court concluded otherwise only because it inverted the qualified immunity analysis. It did not ask, as it should have, whether there is a "materially similar" decision from the Supreme Court or the Eleventh Circuit recognizing a § 1983 malicious prosecution claim based on probation revocation. *Wade*, 36 F.4th at 1323. Instead, the district court held that, because there is no prior decision holding that a revocation is *not* a prosecution, the officers are not entitled to qualified immunity on that question. *See* Doc. 18 at 11 (noting "the absence of binding precedent").

This maneuver reversed the usual qualified immunity burdens: instead of requiring Gervin, as the plaintiff, to identify a prior decision clearly establishing his claimed right, *see Wade*, 36 F.4th at 1334, the district court required the officers, as defendants, to identify a prior decision clearly rejecting that right. But that reversal undermines the very interests qualified

38

immunity is meant to promote.  If a probation officer is on the hook for § 1983 damages whenever they cannot find a prior decision specifically allowing their behavior, then they will not be able to "carry out their discretionary duties without the fear of personal liability," *Gilmore v. Hodges*, 738 F.3d 266, 272 (11th Cir. 2013) (citation omitted); *see also Crosby*, 394 F.3d at 1334 ("[G]overnment officials are not required to err on the side of caution when it comes to avoiding constitutional violations." (quotation omitted)).

That is not how qualified immunity works.  If there is no squarely applicable precedent, then qualified immunity must apply, *Mullenix*, 577 U.S. at 11–12, not the other way around.  Of course, because a probation revocation is not a criminal prosecution, the officers did not violate Gervin's constitutional rights—but even if the Court disagrees, it was not *clearly established* when the officers engaged in the acts at issue here. The Court should reverse.

39

## CONCLUSION

For the reasons set out above, this Court should reverse the judgment of the district court to the extent it denied summary judgment on Gervin's Fourth Amendment claims against the officers.

Respectfully submitted.

|  |  |
|---|---|
|  | /s/ *Paul R. Draper* |
| Loretta L. Pinkston-Pope<br>*Deputy Attorney General* | Christopher M. Carr<br>*Attorney General of Georgia* |
| Laura Lones<br>*Senior Asst. Attorney General* | Stephen J. Petrany<br>*Solicitor General* |
|  | Paul R. Draper<br>*Asst. Attorney General* |
|  | Office of the Georgia<br>Attorney General<br>40 Capitol Square, SW<br>Atlanta, Georgia 30334<br>(404) 458-3602<br>pdraper@law.ga.gov |

*Counsel for Defendant-Appellants*

## CERTIFICATE OF COMPLIANCE

This document complies with the type-volume limitation of Rule 32(a)(7)(B) of the Federal Rules of Appellate Procedure because it contains 8,058 words as counted by the word-processing system used to prepare the document.

<u>/s/ *Paul R. Draper*</u>
Paul R. Draper

## CERTIFICATE OF SERVICE

I hereby certify that on July 26, 2023, I served this brief by electronically filing it with this Court's ECF system, which constitutes service on all attorneys who have appeared in this case and are registered to use the ECF system.

/s/ *Paul R. Draper*
Paul R. Draper