# UNITED STATES COURT OF APPEALS
# FOR THE ELEVENTH CIRCUIT

———————————

DESHAWN GERVIN,

*Plaintiff/Appellee*,

v.

PAMELA FLORENCE and TANDRIA MILTON,

*Defendants/Appellants.*

———————————

Appeal From The United States District Court
For The Middle District Of Georgia
Case No. 1:21-cv-67-LAG

———————————

**BRIEF OF APPELLEE DESHAWN GERVIN**

———————————

ZACK GREENAMYRE
Georgia Bar No. 293002
MITCHELL SHAPIRO GREENAMYRE & FUNT, LLP
881 Piedmont Avenue
Atlanta, Georgia 30309
Phone: 404-812-4747
zack@michtellshapiro.com

September 25, 2023

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

1.     Carr, Christopher M. (counsel for Defendants and Defendants/Appellants);

2.     Cowart, Annette (former counsel for Defendants and Defendants/Appellants);

3.     Cusimano, Ellen (counsel for Defendants and Defendants/Appellants);

4.     Draper, Paul (counsel for Defendants/Appellants);

5.     Florence, Pamela (Defendant/Appellant);

6.     Funt, Samantha (counsel for Plaintiff/Appellee);

7.     Gervin, DeShawn (Plaintiff/Appellee);

8.     Greenamyre, Zack (counsel for Plaintiff/Appellee);

9.     Hampton, Hoke (Defendant);

10.     Lones, Laura (counsel for Defendant and Defendants/Appellants);

11.     Milton, Tandria (Defendant/Appellant);

12.     Mitchell Shapiro Greenamyre & Funt, LLP (law firm for counsel for Plaintiff/Appellee);

13.     Pacious, Kathleen M. (counsel for Defendants and

Defendants/Appellants);

14. Petrany, Stephen, (counsel for Defendants/Appellants);

15. Pinkston-Pope, Loretta (counsel for Defendants and

Defendants/Appellants);

16. Teaster, Susan E. (counsel for Defendants and Defendant/Appellant);

17. The Honorable Leslie A. Gardner (United States District Court Judge).

No publicly traded company or corporation has an interest in the outcome of

this case or appeal.

This 25th day of September, 2023.

/s/ Zack Greenamyre
Zack Greenamyre
Georgia Bar No. 293002

## STATEMENT REGARDING ORAL ARGUMENT

Appellee does not request oral argument. The facts and legal arguments are adequately presented in the briefs and the decisional process would not be significantly aided by oral argument.

# TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement.................C-1

Statement Regarding Oral Argument ........................................................................i

Table of Contents.................................................................................................... ii

Table of Citations ..................................................................................................iv

Jurisdictional Statement............................................................................................1

Statement of the Issues ..............................................................................................i

Statement of the Case ...............................................................................................3

      A.  Statement of Facts...........................................................................3

      B.  Procedural History ........................................................................8

Summary of the Argument ........................................................................................9

Argument and Citation of Authority.......................................................................13

   I.      THE DISTRICT COURT PROPERLY DENIED SUMMARY JUDGMENT ON PLAINTIFF'S FOURTH AMENDMENT CLAIM........................14

   II.     QUALIFIED IMMUNITY WAS PROPERLY DENIED WHERE THE PRECISE CONDUCT AT ISSUE HAD LONG BEEN UNLAWFUL..30

   III.    IF THE FOURTH AMENDMENT IS NOT THE HOME FOR THIS CLAIM, THE DISTRICT COURT ERRED IN DISMISSING THE EIGHTH AND FOURTEENTH AMENDMENT CLAIMS      32

Conclusion...............................................................................................................34

Certificate of Compliance........................................................................................35

Certificate of Service ..............................................................................................36

# TABLE OF CITATIONS

## *Cases*

*Al-Amin v. Smith*,
    511 F.3d 1317, 1335–36 (11th Cir. 2008)..................................... 14, 35

*Bailey v. Swindell*,
    940 F.3d 1295 (11th Cir. 2019)..................................................... 35

*Beck v. City of Muskogee Police Dep't*,
    195 F.3d 553 (10th Cir. 1999)....................................................... 31

*Bivens v. Six Unknown Fed. Narcotics Agents*,
    403 U.S. 388 (1971) ..................................................................... 29

*Black v. Wigington*,
    811 F.3d 1259 (11th Cir. 2016)..................................................... 25

*Blazek v. Maul*,
    1:19-cv-00098-NDF (D. Wyo.) ................................................... 30

*Blue v. Lopez*,
    901 F.3d 1352 (11th Cir. 2018)................................................ 27, 28

*Bostic v. Vasquez*,
    No. 2:15-CV-429-JPK, 2023 WL 356841 (N.D. Ind.) ...................... 30

*Bowers v. Cruz*,
    No. 12-CV-01841-RPM, 2013 WL 674939 (D. Colo. Feb. 25, 2013) .............. 30

*Bronowicz v. Allegheny Cty.*,
    804 F.3d 338, 340 (3d Cir. 2015)................................................. 31

*Camara v. Mun. Court of City & Cty. of San Francisco*,
    387 U.S. 523 (1967) ..................................................................... 29

*Cannon v. Macon Cty.*,
    1 F.3d 1558 (11th Cir. 1993)................................................... 15, 27

*Carter v. Gore*,
  557 F. App'x 904 (11th Cir. 2014) ............................................................. 25, 28

*Chavez v. Robinson*,
  817 F.3d 1162 (9th Cir. 2016) ...................................................................... 30

*Cottrell v. Caldwell*,
  85 F.3d 1480 (11th Cir. 1996) ........................................................................ 1

*County of Sacramento v. Lewis*,
  523 U.S. 833 (1998) ...................................................................................... 37

*Cty. of Riverside v. McLaughlin*,
  500 U.S. 44 (1991) ........................................................................................ 19

*DeMartini v. Town of Gulf Stream*,
  942 F.3d 1277 (11th Cir. 2019) ....................................................... 22, 26, 28

*Dettelis v. Sharbaugh*,
  919 F.3d 161 (2d Cir. 2019) .......................................................................... 31

*Dreyer v. Sheaffer*,
  3:08-CV-1132, 2009 WL 222668 (M.D. Pa. Jan. 28, 2009) ......................... 30

*English v. City of Gainesville*,
  75 F.4th 1151 (11th Cir. 2023) ........................................................................ 1

*Farmer v. State*,
  455 S.E.2d 297 (Ga. Ct. App. 1995) ............................................................... 7

*Fitzjohn v. Mackinder*,
  (1861) 142 Eng. Rep. 199 .............................................................................. 24

*Franks v. Delaware*,
  438 U.S. 154 (1978) ............................................................................... passim

*Gelatt v. Cnty. of Broome, N.Y.*,
  811 F. Supp. 61 (N.D.N.Y. 1993) .................................................................. 31

*Gerstein v. Pugh*,
420 U.S. 103 (1975) .................................................................................. 19

*Grant v. State*,
393 S.E.2d 737 (Ga. Ct. App. 1990).................................................... 7

*Harlow v. Fitzgerald*,
457 U.S. 800 (1982) .................................................................................. 29

*Hazle v. Crofoot*,
727 F.3d 983 (9th Cir. 2013)................................................................ 30

*Hernandez v. City of Oakley*,
C-11-02415 JCS, 2012 WL 5411781 (N.D. Cal.)) ........................... 31

*Hockbein v. Pine Cty.*,,
CV 17-5224 (DWF/LIB), 2019 WL 135697 (D. Minn.)

.................................................................................................... 31

*Hudson v. Hall*,
231 F.3d 1289 (11th Cir. 2000)............................................................ 34

*Janny v. Gamez*,
8 F.4th 883 (10th Cir. 2021 ................................................................. 30

*Johnson v. Shannon*,
484 F. Supp. 3d 1344 (N.D. Ga. 2020)............................................. 30

*Jones v. Cannon*,
174 F.3d 1271 (11th Cir. 1999)............................................................ 5

*Jones v. State*,
653 S.E.2d 456 (Ga. 2007) .................................................................... 7

*Landon v. County of Orange*,
No. 08-CV-8048, 2009 WL 2191335, at * 6 (S.D.N.Y. July 23, 2009)............. 31

*Laskar v. Hurd*,
972 F.3d 1278 (11th Cir. 2020)...................................................... 20, 21

*Luke v. Gulley*,
    50 F.4th 90 (11th Cir. 2022)......................................................... passim

*Luke v. Gulley*,
    975 F.3d 1140 (11th Cir. 2020)............................................ 18, 20, 25

*Mancusi v. DeForte*,
    392 U.S. 364 (1968) ........................................................................ 33

*Manuel v. City of Joliet, Ill.*,
    580 U.S. 357 (2017) ................................................................. 27, 29

*McCurry v. Moore*,
    242 F. Supp. 2d 1167 (N.D. Fla. 2002)........................................ 14, 36

*Occhino v. United States*,
    686 F.2d 1302 (8th Cir. 1982).......................................................... 31

*Rose v. Goldman*,
    2009 WL 4891810 (E.D.N.Y.)......................................................... 31

*Sosa v. Martin Cnty., Fla.*,
    57 F.4th 1297 (11th Cir. 2023).......................................................... 37

*Stephens v. State*,
    268 S.E.2d 330, 332 (Ga. 1980) ......................................................... 7

*Thompson v. Clark*,
    142 S. Ct. 1332 (2022) ............................................................ passim

*Uboh v. Reno*,
    141 F.3d 1000 (11th Cir. 1998)........................................................ 28

*United States v. Qasem*,
    2:22-cr-00087-SDM, (N.D. Ohio) ................................................... 30

*United States v. Williams*,
    1:19-cr-00154, (N.D. Ga.)

    ................................................................................................. 30

*Washington v. Howard,*
　　25 F.4th 891 (11th Cir. 2022) ...................................................... passim

*Watson v. Georgia Dep't of Corr.,*
　　645 S.E.2d (Ga. Ct. App. 2007) ......................................................... 29

*West v. Tillman,*
　　496 F.3d 1321 (11th Cir. 2007) ......................................................... 36

*Whiting v. Traylor,*
　　85 F.3d 581 (11th Cir. 1996) ............................................................. 25

*Williams v. Aguirre,*
　　965 F.3d 1147 (11th Cir. 2020) ................................................... passim

*Williams v. Georgia Dep't of Corr.,*
　　1:11-CV-01296-AT, 2012 WL 12895637 (N.D. Ga.) ......................... 30

### Statutes and Rules

28 U.S.C. § 1291 ................................................................................. 34

42 U.S.C. § 1983 ............................................................................ passim

# JURISDICTIONAL STATEMENT

To the extent the factual difference between intentional falsehoods and unaware mistakes is material to this appeal, this Court lacks jurisdiction. *See English v. City of Gainesville*, 75 F.4th 1151, 1155 (11th Cir. 2023) (no jurisdiction where Court "asked to determine 'whether the district court erred in determining that there was an issue of fact for trial about the defendant's actions or inactions . . . .'" (quoting *Cottrell v. Caldwell*, 85 F.3d 1480, 1484 (11th Cir. 1996)). The district court found, as a matter of fact, that "Defendant Florence intentionally or recklessly made false statements in her affidavit." Doc. 18 at 14. Similarly, the court found "Defendant Milton intentionally or recklessly made or submitted material misstatements in order to advance the legal process." *Id.* at 16. Indeed, Defendants never argued below that they had any arguable justification whatsoever to seek a warrant for Plaintiff's arrest. *See generally* Doc. 15-1. But now, Defendants repeatedly characterize their actions as a "mistake" of which they were "unaware." *See* Appellant Br. at 1, 2, 28, 32–33. This Court lacks jurisdiction to consider arguments that depend on that factual distinction.

# STATEMENT OF THE ISSUES

1.    Defendants have conceded a violation of *Franks v. Delaware*, 438 U.S. 154 (1978), at least for purposes of summary judgment, meaning that they made intentional, material misstatements in a warrant application that lacked probable cause. That false warrant application led to Plaintiff being detained without bail for 104 days. Should this Court create an exception to the bedrock rule that warrants are governed by the Fourth Amendment to allow probation officers to seize citizens indefinitely for no reason without even minimal Constitutional scrutiny?

2.    At least by the end of the last century, "the law was clearly established . . . that the Constitution prohibits a police officer from knowingly making false statements in an arrest affidavit about the probable cause for an arrest in order to detain a citizen . . . if such false statements were necessary to the probable cause." *Jones v. Cannon*, 174 F.3d 1271, 1285 (11th Cir. 1999). Defendants testified that they subjectively knew this rule and that it was nothing new. "We have never wavered about the prohibition of misstatements in warrant applications." *Williams v. Aguirre*, 965 F.3d 1147, 1169 (11th Cir. 2020). Should the Court waver now and afford qualified immunity to conduct that every officer and citizen knows is wrong?

## **STATEMENT OF THE CASE**

### *A.     Statement of Facts*

####  <u>1.     Introduction</u>

Plaintiff DeShawn Gervin was a probationer ordered to comply with only one condition: banishment. He was ordered not to return to the South Georgia Judicial Circuit. Doc. 15-12. Plaintiff complied in full by staying out of the Circuit—until he was brought back against his will to answer for a warrant that never should have issued.

Despite knowing his one condition had been satisfied, Florence Dep. 32:1–33:5, in 2012 Defendant Pamela Florence obtained a warrant by swearing that Plaintiff failed to follow conditions *that were never imposed*. Based on her own testimony, Florence reviewed his sentence, knew Gervin was not obligated to report to any probation office or to get permission before leaving the state, knew he was shipped out of state, and yet she swore out a warrant for violating those non-existent conditions. 40:17-25; 41:1-4. By intentionally including these statements in her warrant, Florence caused Plaintiff to be arrested in 2019 in North Carolina during a traffic stop in which Plaintiff was a passenger in a vehicle after the officer discovered Florence's warrant. Gervin Dep. 16:2-5.

In 2019, after Plaintiff's arrest in North Carolina and extradition back to Mitchell County, Defendant Tandria Milton furthered Plaintiff's unlawful detention

by drafting a petition for revocation of Plaintiff's probation, which a judge then signed. Doc. 15-10 at 1. Milton swore out this petition only after she reviewed Plaintiff's sentence, Milton Dep. 21:9–22:21, and thus she subjectively knew that Plaintiff was not required to report or to keep probation apprised of his address, as she alleged he failed to do, Doc 15-10 at 1, 3.[1]

### 2. Plaintiff's Probation

On January 4, 2012, Plaintiff was sentenced in Mitchell County, Georgia to one year of jail time followed by nine years of probation. *See* Doc. 15-12. At his sentencing hearing, the Court imposed only one condition for probation: "do not return to the South Georgia Judicial Circuit during probation." *Id*. None of the boxes next to the general conditions were checked, and the judge made no other oral pronouncement, and thus no general conditions were imposed:[2]

---

[1] Defendants' briefing makes reference to other arrests of Plaintiff. *See* Appellant Br. at 5, 6. Such detention may be relevant to damages, but it has no bearing on any issue in this appeal, and Defendants have made no such argument.

[2] *Jones v. State*, 653 S.E.2d 456, 458 (Ga. 2007) (finding no condition of probation imposed where "[a]lthough the pre-printed sentencing form provided a list of general and special conditions of probation that included a requirement that the probationer submit to warrantless searches upon the request of a probation officer, the box next to the warrantless search condition was not checked."); *Farmer v. State*, 455 S.E.2d 297, 302 (Ga. Ct. App. 1995) (unlawful to "ignore the written record of sentencing" by imposing new conditions "at the whim of a probation officer"); *Grant v. State*, 393 S.E.2d 737, 739 (Ga. Ct. App. 1990) ("An accused is entitled to rely on the provisions set forth in the sentencing document"); *Stephens v. State*, 268 S.E.2d

☑ **FELONY SENTENCE**  ☐ **MISDEMEANOR SENTENCE**

WHEREAS, the above-named defendant has been found guilty of the above-stated offense, WHEREUPON, it is ordered and adjudged by the Court that:
The said defendant is hereby sentenced to confinement for a period of _____ *10 Years* _____
_____ in the State Penal System or such other institution as the Commissioner
of the State Department of Corrections or Court may direct, to be computed as provided by law, HOWEVER, it is further ordered by the Court:
☑ 1) THAT the above sentence may be served on probation PROVIDED that the said defendant complies with the following general and other conditions
and special conditions on page 2 herein imposed by the Court as part of this sentencing.
☑ 2) THAT upon service of *12 months* _____ of the above sentence, the remainder of *9 years* _____
may be served on probation PROVIDED that the said defendant complies with the following general and other conditions and special conditions on
page 2 herein imposed by the Court as part of this sentencing. *Do not return to So. Ga Judicial Circuit during Probation*

☐ **GENERAL CONDITIONS OF PROBATION**
The defendant, having been granted the privilege of serving all or part of the above-stated sentence on probation, hereby is sentenced to the following
general conditions of probation:
☐ 1) Do not violate the criminal laws of any governmental unit.
☐ 2) Avoid injurious and vicious habits – especially alcoholic intoxication and narcotics and other dangerous drugs unless prescribed lawfully.
☐ 3) Avoid persons or places of disreputable or harmful character.
☐ 4) Report to the Probation-Parole Supervisor as directed and permit such Supervisor to visit him (her) at home or elsewhere.
☐ 5) Work faithfully at suitable employment insofar as may be possible.
☐ 6) Do not change his (her) present place of abode, move outside the jurisdiction of the Court, or leave the State for any period of time without prior
permission of the Probation Supervisor.
☐ 7) Support his (her) legal dependants to the best of his (her) ability.
☐ 8) Submit to evaluations and testing relating to rehabilitation and participate in and successfully complete rehabilitation programming as directed by the
Probation Department

☐ **OTHER CONDITIONS OF PROBATION**
IT IS FURTHER ORDERED that the defendant pay a fine in the amount of $_____, pay restitution in the amount of
$_____ and pay Court Costs in the amount of $_____
IT IS THE FURTHER ORDER of the Court, and the defendant is hereby advised that the Court may, at any time, revoke any conditions of this probation
and/or discharge the defendant from probation. The probationer shall be subject to arrest for violation of any condition of probation herein granted. If
such probation is revoked, the Court may order the execution of the sentence which was originally imposed or any portion thereof in the manner provided
by law after deducting therefrom the amount of time the defendant has served on probation.
The defendant was represented by the Honorable *Ernie Sheffield*, Attorney at Law, _____, County,
by (Employment) (Appointment).                    By the Court _____ *January    4*, 20 *12*

DA *Mike Garrett*     CR *Pat Brewer*     PO *Mattie Barnes*

So ordered this ___4___ day of *January*, 20 *12*. _____ *CJ Wallace Cato*
                                                        Judge *Mitchell* _____ Superior Court

*Id.*

After Plaintiff was released from jail, a Sheriff's deputy escorted him to the
Greyhound bus station in Albany where he ensured that Plaintiff got on a bus to leave
the state, bound for Missouri. Gervin Dep. 11:14–25; 12:1–9; Florence Dep.
Florence Dep. 32:1–33:5 (Florence's own notes confirming she understood he was
banished and immediately transported out of state). No one provided Plaintiff with

_____

330, 332 (Ga. Ct. App. 1980) ("If there is any doubt as to the effect of a criminal
sentence, the defendant will be given the benefit of such doubt.").

any instructions about probation, other than those on the sentence. Gervin Dep. 12:10–13.

### 3. Florence's Role in Plaintiff's Unlawful Seizure

Defendant Florence was appointed as Gervin's probation officer and, at the outset, made a case note acknowledging that Gervin had been banished from the South Georgia Circuit. Florence Dep. 32:10–14. Florence spoke with the Sheriff's Office and knew Plaintiff had been escorted to a bus station to leave the state following his release. Florence Dep. 32:19–24.

Prior to taking out a probation violation warrant, Florence reviewed Plaintiff's Mitchell County Sentence. Florence Dep. 40:17–25; 41:1–4 ("I know I looked at the sentence . . . I'm sure I looked at the sentence."). Florence knew that the Court sets the terms of probation, not the probation officer, and that the terms must be written on the sentence or they did not apply. Florence Dep. 23:6–8. Florence also knew Judge Cato, who sentenced Plaintiff, had a practice of reading off the probation conditions to the probationer during the sentencing hearing and that if there were any questions, she would be able to request a copy of the sentencing hearing transcript. Florence Dep. 42:1–16; 54:13–18 (noting that Judge Cato had a practice of reading conditions of probation from the bench); *id.* 41:16–25 (testifying she had requested transcripts of sentencing hearings for people in the past but not in this case). Yet, Florence did not ask for or review a copy of the transcript from Plaintiff's

sentencing hearing or ask anyone for clarification about the sentence. Florence Dep. 42:22–25; 43:1–3. Had Florence consulted this readily available information, she would have seen that there were no conditions of probation because Judge Cato did not announce any conditions on the record per the court's practice. *See generally* Doc. 15-11.

### 4. Milton's Affirmative Acts Furthering Plaintiff's Detention

Defendant Milton learned that Plaintiff had been arrested in North Carolina and extradited to Mitchell County to face the allegations in Florence's warrant. Milton Dep. 14:1–10. Milton then reviewed Plaintiff's sentence and the case notes associated with his probation. Milton Dep. 21:9–25. The sentence showed he had no conditions other than banishment. Doc. 15-12.

Despite all evidence showing that Plaintiff was in full compliance with his probation, Milton then prepared a petition for revocation of Plaintiff's probation. Doc. 15-10. She ensured that a judge signed the petition, and then she served it on Plaintiff while he was incarcerated at the Mitchell County Jail. *Id.*; Milton Dep. 14:8–10. Milton then testified at Plaintiff's revocation hearing in support of revocation. Milton Dep. 26:23–27:6; Doc. 15-13.

### 5. Defendants' Subjective Knowledge of the Rules Governing Warrants and Probation Supervision

Both Defendant Florence and Milton testified that they knew that the law prohibited them from arresting probationers when they were in full compliance with

the terms of their probation. Florence Dep. 24:18–22; Milton Dep. 12:8–12. Both testified that they knew that had to be truthful in warrant applications. Florence Dep. 22:4–6; Milton Dep. 11:6–10. And both also testified that they knew that the written terms of the sentence govern a probationer's obligations. Florence Dep. 23:6–8; Milton Dep. 12:22–13:1.

### B.    Procedural History

After discovery, Defendants filed a motion for summary judgment. *See* Doc. 15. The district court denied summary judgment as to Defendant Florence because the facts showed that she "intentionally or recklessly made false statements in her affidavit," which violated clearly established law. Doc. 18 at 14–15. Similarly, the trial court denied summary judgment as to Defendant Milton because she took multiple "affirmative actions to advance the legal process against Plaintiff" despite knowing there was no basis to do so. *Id.* at 15–16. The parties agreed that Defendant Hampton was properly entitled to be dismissed, and the district court did so. *See id.* at 7, 21. Defendants then timely appealed. Doc. 19.

## SUMMARY OF THE ARGUMENT

To start, it is important to set out what is not at issue.

There is no dispute that Defendants violated *Franks v. Delaware*'s prohibition on intentional or reckless material falsehoods in a warrant application. 438 U.S. 154 (1978). There is no argument that Defendants had *any* level of justification to seek a warrant. And there is no argument or evidence that Plaintiff's detention—of 104 days—could be justified without a warrant. Those concessions should resolve the appeal. On that record, Plaintiff has met his "burden to prove a violation of h[is] Fourth Amendment right to be free of unreasonable seizures," meaning that he has "establish[ed] (1) that the legal process justifying his seizure was constitutionally infirm and (2) that his seizure would not otherwise be justified without legal process." *Williams v. Aguirre*, 965 F.3d 1147, 1165 (11th Cir. 2020) (citation and internal quotation marks omitted).

Defendants' *sole* argument on the merits is that extended detention caused by a warrant issued without any cause whatsoever is simply not cognizable as a constitutional injury if the warrant application contains an allegation that there was a probation violation. In other words, according to Defendants, a probation officer can jail someone indefinitely—for a bad reason or for no reason at all—and the detainee is left without any civil remedy because a probation revocation proceeding is insufficiently criminal in nature to give rise to a malicious prosecution claim.

Fortunately, Defendants are mistaken. The common law supports a malicious prosecution for a "suit or proceeding" without probable cause, regardless of whether there was a criminal prosecution. *See Thompson v. Clark*, 142 S. Ct. 1332, 1338 (2022). Similarly, Eleventh Circuit precedent is clear that a warrant-based seizure—such as the one that caused Plaintiff's extended detention—is sufficient to initiate process for a malicious prosecution claim. *See Williams*, 965 F.3d at 1165 (holding legal process is infirm giving rise to a malicious prosecution claim where "an official, including an individual who did not apply for the warrant, intentionally or recklessly made misstatements or omissions necessary to support the warrant"); *id.* at 1158 ("*Of course*, warrant-based seizures fall within this category." (emphasis added)). And the Fourth Amendment's and § 1983's values require that there be constitutional scrutiny of warrants that lead to prolonged detention, regardless of what the common law elements of the most analogous tort say. In short, overlapping sources of authority foreclose Defendants' only argument on the merits.

Defendants' argument for qualified immunity fares no better. *Franks*' rule against intentional and reckless material misstatements has long been the law of the land: "Our prohibition of intentional, material misstatements in warrant applications has long been a cornerstone of this Court's jurisprudence on the validity of warrant-based seizures. In the light of this uncontroverted and well-established rule, we readily conclude that every reasonable official would interpret our precedents to

establish that intentional, material misstatements in warrant applications violate the Constitution." *Williams*, 965 F.3d at 1169. This Court has "never wavered about the prohibition of misstatements in warrant applications." *Id.* "[T]he 'clearly established' inquiry for qualified immunity focuses on the defendant's conduct" and not the precise doctrinal routes that make conduct unconstitutional. *Al-Amin v. Smith*, 511 F.3d 1317, 1335–36 (11th Cir. 2008). And "[i]n this case, exact factual identity exists between prior case law and defendants' factual conduct." *Id.* No officer could believe they were permitted to intentionally or recklessly provide false material facts to secure a warrant.

Defendants and the district court analyzed Plaintiff's claims under the Fourth Amendment. Plaintiff agrees that the Fourth Amendment is the most natural home for warrant-based seizures. However, if the Fourth Amendment does not provide the source of the prohibition on Plaintiff's baseless detention, the district court erred in dismissing Plaintiff's Eighth and Fourteenth Amendment claims. Wrongful detention of a convicted person violates the Eighth Amendment's prohibition on cruel and unusual punishment. *McCurry v. Moore*, 242 F. Supp. 2d 1167, 1179 (N.D. Fla. 2002) (collecting cases holding that overdetention violates the Eighth Amendment). Similarly, the Fourteenth Amendment proscribes deliberate indifference to a person's liberty when a person is entitled to release. *Cannon v. Macon Cty.*, 1 F.3d 1558, 1564 (11th Cir. 1993) (prison official's failure to

investigate detainee's claims of misidentification violated the plaintiff's due process rights). Although there was no appellate jurisdiction for Plaintiff to cross appeal the grant of summary judgment on these claims, if the Court finds the source of Plaintiff's right to be free of baseless detention for 104 days falls outside of the Fourth Amendment, this Court should provide guidance to the district court on remand.

## **ARGUMENT AND CITATION OF AUTHORITY**

Defendants do not make any argument that their actions might be excused by probable cause, arguable probable cause, good faith, reasonable mistake, or any justification whatsoever. Defendants do not dispute that they violated *Franks.* Instead, they argue there should be no remedy when law enforcement officials obtain warrants based on intentionally false information, leading to indefinite detention, so long as they allege a violation of probation. That argument is stunning in light of the Fourth Amendment, 42 U.S.C. § 1983, and this Court's unbroken line of cases holding that "intentional, material misstatements in warrant applications violate the Constitution." *Williams*, 965 F.3d at 1169.

Despite the novel, and fundamentally misguided, nature of their argument, Defendants aim significant invective at the district court for applying extant precedent. Even with the conceded *Franks* violations, Defendants assert that it was "remarkabl[e]" that the trial court partially denied summary judgment. Appellant Br. at 3. According to Defendants, the summary judgment order was plagued by "circular" reasoning, *id.* at 31; "non-sequitur," *id.* at 34; and naked "ipse dixit," *id.* at 35; which cumulatively "boil[ed] down to a policy preference" to "maximize[] liability under § 1983," *id.* at 30. As review of the order makes clear, those characterizations do not accurately reflect the lower court's faithful application of this Court's precedents regarding warrant-based seizures.

# I. THE DISTRICT COURT PROPERLY DENIED SUMMARY JUDGMENT ON PLAINTIFF'S FOURTH AMENDMENT CLAIM

Plaintiff's argument in support of affirmance on the merits is simple. Warrants in the United States are governed by the Fourth Amendment. That portion of our Constitution provides that "no Warrants shall issue, but upon probable cause, supported by Oath or affirmation." *See* U.S. Const. amend. IV. Decisional law has long provided that intentional and reckless material falsehoods in warrant applications violate the Fourth Amendment. *See, e.g.*, *Williams*, 965 F.3d 1169. And 42 U.S.C. § 1983 provides a civil remedy for constitutional violations. In short, because Defendants obtained a warrant without probable cause based on conceded intentional and reckless material falsehoods, and because those unconstitutional actions resulted in unjustified detention for 104 days, the district court properly denied summary judgment as to Defendants Florence and Milton on Plaintiff's Fourth Amendment claim.

Defendants argue for a new exception to the Fourth Amendment. They do not argue that the right should be analyzed by any other portion of the Constitution. But nevertheless they assert that a warrant alleging a probation violation should not be regulated by the Fourth Amendment, or at all. That argument is wholly atextual and ahistorical. It flies in the face of decades of precedent. And it would potentially swallow the Fourth Amendment whole. This Court should reject the invitation to rewrite Constitution, statute, and precedent.

### A.     The law governing warrant-based unlawful seizure claims

In recent years, this Court has "reconcile[d] our precedents" concerning warrant-based unlawful seizure claims. *Williams*, 965 F.3d at 1165. Under the restated standard, to prevail, it is "plaintiff's burden to prove a violation of h[is] Fourth Amendment right to be free of unreasonable seizures. To meet this burden, a plaintiff must establish (1) that the legal process justifying his seizure was constitutionally infirm and (2) that his seizure would not otherwise be justified without legal process." *Id.* (citations and internal quotation marks omitted). This Court held that this "simplified standard for malicious prosecution incorporates the common law elements of (express or implied) malice and lack of probable cause." *Luke v. Gulley*, 50 F.4th 90, 96 (11th Cir. 2022) ("*Luke II*"). The same is true of the initiation element. *Luke v. Gulley*, 975 F.3d 1140, 1144 (11th Cir. 2020) ("*Luke I*") ("If a plaintiff establishes that a defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process, he has also established that the defendant instituted criminal process against him . . . .").

Regarding the first element, a plaintiff can prove "the legal process justifying his seizure" is "constitutionally infirm" in a case involving an arrest warrant where "he establishes either that the officer who applied for the warrant should have known that his application failed to establish probable cause, or that an official, including an individual who did not apply for the warrant, intentionally or recklessly made

misstatements or omissions necessary to support the warrant." *Id.* (citations omitted).

As to the second element, detention without legal process is generally limited because only a "brief period of detention" is lawful without some form of legal process. *Gerstein v. Pugh*, 420 U.S. 103, 113–14 (1975); *see also Cty. of Riverside v. McLaughlin*, 500 U.S. 44, 53 (1991) (holding that detentions of more than 48 hours without a judicial determination of probable cause are presumptively unconstitutional).

Plaintiff satisfies the first element as to Florence because the district court found "[t]here is no genuine dispute that Defendant Florence intentionally or recklessly made false statements in her affidavit when she claimed that Plaintiff had violated General Conditions 4 and 6." Doc. 18 at 14. As to Milton, Plaintiff satisfies this element because she "intentionally or recklessly made or submitted material misstatements in order to advance the legal process." *Id.* at 16; *see also Washington v. Howard*, 25 F.4th 891, 898 (11th Cir. 2022) ("[F]or the purposes of [a] malicious prosecution" claim under § 1983, an officer is liable for violating the Fourth Amendment if she "took an affirmative action to advance the legal process.").

Plaintiff satisfies the second element because he was detained for so long. Plaintiff's detention "could not be justified as a warrantless arrest" or without some form of legal process. *Williams*, 965 F.3d at 1167. Plaintiff's 104 day "seizure was

far too long to be justified without legal process," such that there was no alternative authority by which his seizure would have been permissible. *Id*. Defendants identify no authority that would allow law enforcement to indefinitely jail someone on probation without minimal justification or legal process.

Defendants did not cite this reconciled standard that this Court articulated in *Williams* and elaborated upon in *Laskar v. Hurd*, 972 F.3d 1278 (11th Cir. 2020); *Luke I*, 975 F.3d 1140; *Washington,* 25 F.4th 891; and *Luke II*, 50 F.4th 90. In some ways that shortcoming is understandable because there is no credible argument that Plaintiff has not met this standard, at least for summary judgment purposes. But Defendants' failure to cite the correct standard does not change the rules this Court applies. Under the applicable law, the district court properly denied summary judgment as to Florence and Milton on Plaintiff's Fourth Amendment claim.

### B.   *A seizure pursuant to a warrant is sufficient to initiate a proceeding for malicious prosecution purposes*

A seizure pursuant to a warrant satisfies the initiation element of what is somewhat crudely called a "malicious prosecution" claim.[3] The key question here is not whether a probation revocation proceeding is a "criminal prosecution" under Georgia law, as Defendants have framed it. Instead, the question is whether the

---

[3] *Williams*, 965 F.3d at 1157 ("[T]his Court uses 'malicious prosecution' as only 'a shorthand way of describing' certain claims of unlawful seizure under the Fourth Amendment.").

warrant acted as a seizure pursuant to legal process. *Luke I*, 975 F.3d at 1144 ("If a plaintiff establishes that a defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process, he has also established that the defendant instituted criminal process against him . . . ."). That a warrant causing a long-term detention is sufficient to establish the initiation element of a malicious prosecution claim is supported by the common law at the time 42 U.S.C. § 1983 was enacted, precedent, and by the values underpinning the Fourth Amendment.

### 1.    The Common Law

The common law supports the notion that a warrant procured through falsehoods satisfies the initiation element of a malicious prosecution claim. The relevant common law is the common law at the time of the enactment of § 1983. *See Williams*, 965 F.3d at 1159. In contrast, "modern common law is not the touchstone when defining a claim under section 1983." *Laskar*, 972 F.3d at 1294.

There are two threads to the common law at issue here. *First*, the sum of the common law at the relevant time is that a criminal proceeding was not required—a civil action or something quasi-criminal was sufficient to give rise to a malicious prosecution claim. Last year, the United States Supreme Court, in a decision that favorably cited this Court's recent malicious prosecution jurisprudence, summed up the state of the law of malicious prosecution claims as of the enactment of § 1983:

> American courts described the elements of the malicious
> prosecution tort as follows: (i) ***the suit or proceeding*** was

> "instituted without any probable cause"; (ii) the "motive in instituting" the suit "was malicious," which was often defined in this context as without probable cause and for a purpose other than bringing the defendant to justice; and (iii) the prosecution "terminated in the acquittal or discharge of the accused."

*Thompson v. Clark*, 142 S. Ct. 1332, 1338 (2022) (citing T. Cooley, Law of Torts 181 (1880) (emphasis added)). A suit or proceeding was sufficient. A criminal prosecution was not required. *See also DeMartini v. Town of Gulf Stream*, 942 F.3d 1277, 1309 (11th Cir. 2019) (using malicious prosecution to analyze First Amendment claim and holding that "[i]t has long been settled law, and DeMartini does not dispute, that wrongful civil proceedings claims require proving the absence of probable cause." (citing T. Cooley, Law of Torts 187–89 (1879)). For further support for the historical validity of malicious prosecution claims for baseless civil litigation, the Cato Institute's brief as amicus curiae in support of Plaintiff is instructive and persuasive.

Defendants accused the district court of "neglect[]" in how it addressed "this historical context." Appellant Br. at 22. But Defendants' historical analysis consisted of taking the modern element of malicious prosecution that sometimes requires a criminal prosecution and querying three old dictionaries for how they defined the word "prosecution." *See id.* at 21–22. Defendants did not address the Supreme Court's historical work in *Thompson* showing that the relevant element involved a "suit or proceeding," not a criminal prosecution. But Defendants persistently

describe probation revocation as a "proceeding." *See* Appellant Br. at i, 2–3, 11, 15–16, 18 n.4, 20–22, 24, 26–31, 33, 35. If the process initiated and continued by Defendants was not a prosecution, it was undoubtedly a "proceeding."

Separately, Defendants' citation to Newell's treatise is misleading. Shortly after the portion Defendants quoted for the proposition that civil cases generally did not give rise to malicious prosecution, Newell wrote that malicious prosecution refers to criminal cases "commonly, but not necessarily." Newell recognized that there would be "no question" that a malicious prosecution claim could be maintained for a civil case that resulted in "an unjustifiable and malicious seizure." *See* Cato Institute Br. at 6–7 & n.26.

*Second*, a warrant was the hallmark way to start a malicious prosecution. *See* 2 C. G. ADDISON, A TREATISE ON THE LAW OF TORTS ch. XII, § 856, at 74 (H.G. Wood ed., Jersey City, Frederick D. Linn & Co. 1881) ("If [an individual] maliciously and without reasonable and probable cause has . . . induced [a] magistrate to issue a warrant against [another], [that person] is responsible in damages in an action for malicious prosecution."). An individual who obtained a warrant might be liable if he "willfully" or recklessly made misstatements or omissions to support the warrant application. *See id.* ch. XIII, § 856, at 74–75 (explaining that an action malicious prosecution might lie if "the charge was willfully false, . . . untrue to his knowledge at the time[,] . . . or were of such a nature

that no well-intentioned person would state" it without further investigation); *Fitzjohn v. Mackinder* (1861) 142 Eng. Rep. 199, 208 (opinion of Cockburn, J.) (explaining that a judicial order to prosecute another person does not protect the prosecutor if the order was obtained maliciously).[4]

A final point on the common law: Defendants have not addressed the reality that this Court has repeatedly held that a showing of constitutionally infirm process, an extended seizure, and a termination not inconsistent with innocence necessarily satisfies any common law elements of the tort of malicious prosecution as a matter of law. *See Luke I*, 975 F.3d at 1144 ("If a plaintiff establishes that a defendant violated his Fourth Amendment right to be free from seizures pursuant to legal process, he has also established that the defendant instituted criminal process against him with malice and without probable cause. This proof will also satisfy the plaintiff's burden to establish causation."); *Luke II*, 50 F.4th at 96 ("[O]ur simplified standard for malicious prosecution incorporates the common law elements . . ."). This precedent about the interplay between the tort of malicious prosecution and Fourth Amendment wrongful seizure claims confirms that Plaintiff has satisfied the initiation element.

---

[4] This history is taken from *Washington*, 25 F.4th at 905–06.

## 2. Eleventh Circuit Precedent

Under this Court's precedent, a warrant is legal process. "Of course, warrant-based seizures fall within this category." *Williams*, 965 F.3d at 1158. "Legal process includes an arrest warrant." *Black v. Wigington*, 811 F.3d 1259, 1267 (11th Cir. 2016). This is because "[o]btaining an arrest warrant is one of the initial steps of a criminal prosecution." *Whiting v. Traylor*, 85 F.3d 581, 585–86 (11th Cir. 1996).[5] These cases are sufficient to end the inquiry. Defendants do not cite to, or engage with, this precedent. They certainly have provided no justification to ignore it or to change it. And regardless of whether the warrant initiated the proceeding, or merely continued it, Defendants can be liable for a violation of the Fourth Amendment and malicious prosecution. *Washington*, 25 F.4th at 908 (collecting common law and concluding that "taking affirmative steps to further a prosecution was actionable").

Indeed, Defendants conceded that Plaintiff was held via legal process caused by the warrant. *See* Doc. 15-1 at 5 ("Because he was arrested and held pursuant to legal process—an arrest warrant—this action sounds in malicious prosecution."). Defendants should be bound by this concession, consistent with this Court's precedent, that Plaintiff was seized pursuant to legal process in the form of the

---

[5] *See also Carter v. Gore*, 557 F. App'x 904, 906–07 (11th Cir. 2014) ("The issuance of a warrant—even an invalid one as Carter alleges was issued here—constitutes legal process . . . .").

warrant Florence falsely swore to and Milton intentionally furthered without cause.

### 3. Fourth Amendment Values

"To determine the elements of a constitutional claim under § 1983, [Courts must] first look to the elements of the most analogous tort as of 1871 when § 1983 was enacted, [but only] so long as doing so is consistent with the values and purposes of the constitutional right at issue." *Thompson*, 142 S. Ct. at 1337 (internal quotation marks and citations omitted). Defendants do not look to the consensus contours of the tort of malicious prosecution as of 1871, as shown in *Thompson* and in the Cato Institute's brief; instead they rely upon contemporary state law. They also neglect to attend to the Fourth Amendment and § 1983's values.

A criminal prosecution is not strictly required for a malicious prosecution claim. Instead, a "suit" or other "proceeding" is sufficient. Thus, in *DeMartini*, 942 F.3d at 1300–01, the Eleventh Circuit analyzed a First Amendment claim under a malicious prosecution rubric because that was the proper way to analogize the common law tort to the constitutional value at issue. There, despite there being no criminal proceeding of *any* kind—the only case was civil—the Eleventh Circuit applied the law of malicious prosecution to determine whether there was improper retaliation.

Even to the extent the common law elements of a malicious prosecution claim might include a criminal proceeding, federal law is clear that the common law

elements must be molded to the values the Constitution is designed to protect. *See Thompson*, 142 S. Ct. at 1337. The Supreme Court's decision in *Manuel v. City of Joliet, Ill.*, 580 U.S. 357, 370 (2017) is also instructive: "In defining the contours and prerequisites of a § 1983 claim, . . . courts are to look first to the common law of torts. Sometimes, that review of common law will lead a court to adopt wholesale the rules that would apply in a suit involving the most analogous tort. But not always." *Id.* The Court emphasized that "[c]ommon-law principles are meant to *guide rather than to control* the definition of § 1983 claims, serving more as a source of inspired examples than of prefabricated components." *Id.* (emphasis added). Thus, "[i]n applying, selecting among, or adjusting common-law approaches, courts must closely attend to the values and purposes of the constitutional right at issue." *Id.*

Application of these principles to a federal malicious prosecution claim in *Blue v. Lopez*, 901 F.3d 1352, 1358 (11th Cir. 2018), led the Eleventh Circuit to find that a state procedural rule that undermined the values of the Fourth Amendment could not lawfully be applied in a federal malicious prosecution case. There, the court reasoned that the rule was inconsistent with federal law and noted that "'[w]hen malicious prosecution is brought as a federal constitutional tort, the outcome of the case does not hinge on state law . . . .'" *Id.* (quoting *Uboh v. Reno*, 141 F.3d 1000, 1004 (11th Cir. 1998)).

The same rationale in *DeMartini*, *Manuel*, and *Blue* applies here. Defendants' contention is that because a probation revocation proceeding is insufficiently criminal in nature, malicious prosecution does not apply, and thus neither does the Fourth Amendment.[6] If Defendants' contention is adopted, the result would be contrary to the fundamental principles giving rise to the Fourth Amendment. If Plaintiff is found to have no Fourth Amendment claim, a probation officer could cause a warrant to be issued for any reason or no reason at all, and a person could be detained indefinitely without a remedy. Such a conclusion is anathema to the Fourth Amendment[7] and the broad remedial purpose of 42 U.S.C. § 1983.[8]

Defendants argue that any contention that a government official might jail someone for no good reason is "unserious" and nothing more than "sky-is-falling

---

[6] Note that under Eleventh Circuit precedent, a plaintiff cannot bring a "false arrest" claim because the warrant constitutes legal process. *See, e.g.*, *Carter v. Gore*, 557 F. App'x 904, 906 (11th Cir. 2014) ("The issuance of a warrant—even an invalid one as Carter alleges was issued here—constitutes legal process, and thus, where an individual has been arrested pursuant to a warrant, his claim is for malicious prosecution rather than false arrest.").

[7] *See, e.g.*, *Camara v. Mun. Court of City & Cty. of San Francisco*, 387 U.S. 523, 528 (1967) ("The basic purpose of this Amendment, as recognized in countless decisions of this Court, is to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials.").

[8] Civil actions are "the only realistic avenue[s] for vindication of constitutional guarantees." *Harlow v. Fitzgerald*, 457 U.S. 800, 814 (1982); *Bivens v. Six Unknown Fed. Narcotics Agents*, 403 U.S. 388, 410 (1971) ("For people in Bivens' shoes, it is damages or nothing.").

rhetoric." Appellant Br. at 33.[9] If Defendants were correct on this point, there would, of course, be no need for a Fourth Amendment, or due process, or a Bill of Rights more generally. Contrary to Defendants' assertions, there are unfortunately sometimes incidents where, as here, probation officers do jail people, or threaten to do so, for no reason or a bad reason.

On occasion probation officers have threatened incarceration in exchange for sex.[10] In other instances, officers have forced supervisees to pay unjustified monetary sums or be incarcerated.[11] In still other instances, supervisors have pressured probationers into adopting religious beliefs in violation of the First Amendment.[12] Probationers have also been unlawfully coerced into unlawful self-

---

[9] Defendants also allude to "causes of action already available to probationers" without elaboration. Appellant Br. at 33. Without a § 1983 claim, probationers jailed for no reason would have no cause of action. Georgia's courts have interpreted the Georgia Tort Claims Act to preclude liability when a state official acts to cause any unlawful detention. *See* O.C.G.A. § 50-21-24(7); *Watson v. Georgia Dep't of Corr.*, 645 S.E.2d 629, 631 (Ga. Ct. App. 2007).

[10] *See Bostic v. Vasquez*, No. 2:15-CV-429-JPK, 2023 WL 356841 (N.D. Ind. Jan. 23, 2023); *Bowers v. Cruz*, No. 12-CV-01841-RPM, 2013 WL 674939 (D. Colo. Feb. 25, 2013); *Blazek v. Maul*, 1:19-cv-00098-NDF, ECF No. 28 (D. Wyo. Nov. 20, 2019).

[11] *See United States v. Williams*, 1:19-cr-00154, ECF No. 1 (N.D. Ga. Apr. 26, 2019); *United States v. Qasem*, 2:22-cr-00087-SDM, ECF No. 2 (N.D. Ohio May 23, 2022).

[12] *See Janny v. Gamez*, 8 F.4th 883, 893 (10th Cir. 2021); *Hazle v. Crofoot*, 727 F.3d 983, 986 (9th Cir. 2013).

incrimination.[13] Regardless of the frequency of these incidents, such abuses are serious and merit constitutional scrutiny.

The great weight of authority from the federal courts in Georgia,[14] other district courts,[15] and the courts of appeal[16] show that baseless probation detention is

---

[13] *Chavez v. Robinson*, 817 F.3d 1162, 1164 (9th Cir. 2016).

[14] *Williams v. Georgia Dep't of Corr.*, 1:11-CV-01296-AT, 2012 WL 12895637, at *4 (N.D. Ga. Dec. 18, 2012); *Johnson v. Shannon*, 484 F. Supp. 3d 1344, 1349 (N.D. Ga. 2020).

[15] *See, e.g.*, *Dreyer v. Sheaffer*, 3:08-CV-1132, 2009 WL 222668, at *5 (M.D. Pa. Jan. 28, 2009) (denying motion to dismiss and holding parolee sufficiently stated both a malicious prosecution claim and a fourteenth amendment claim against parole officers); *Hernandez v. City of Oakley*, C-11-02415 JCS, 2012 WL 5411781, at *18 (N.D. Cal. Nov. 6, 2012) ("[W]here it is alleged that a probation officer has wrongfully requested that a court revoke probation, the relevant constitutional violation is malicious prosecution."); *Landon v. County of Orange*, No. 08-CV-8048, 2009 WL 2191335, at * 6 (S.D.N.Y. July 23, 2009) (allowing a malicious prosecution claim based on probation revocation proceeding); *Gelatt v. Cnty. of Broome, N.Y.*, 811 F. Supp. 61, 69 (N.D.N.Y. 1993) (denying qualified immunity where probation officer lacked a reasonable cause to believe that a term of probation has been violated); *Rose v. Goldman*, 2009 WL 4891810, at *8 (E.D.N.Y. Dec.16, 2009) (analyzing a malicious prosecution claim based on probation officer's filing of violation of probation with court but finding probable cause); *Hockbein v. Pine Cty.*, CV 17-5224 (DWF/LIB), 2019 WL 135697, at *3 (D. Minn. Jan. 8, 2019) (analyzing false probation violation under malicious prosecution rubric but finding a lack of seizure based on lack of arrest or incarceration).

[16] *Dettelis v. Sharbaugh*, 919 F.3d 161, 165 (2d Cir. 2019) (recognizing malicious prosecution claim for probation violation, but noting there was "arguable probable cause" and thus qualified immunity); *Bronowicz v. Allegheny Cty.*, 804 F.3d 338, 340 (3d Cir. 2015) (allowing "wrongful detention" claims arising from probation revocation proceedings under malicious prosecution theory); *Occhino v. United States*, 686 F.2d 1302, 1311 (8th Cir. 1982) (FTCA claim construing Minnesota law and analyzing improper probation revocation under malicious

cognizable under § 1983. This Court should follow the significant majority rule.

### C. Probation warrants in Georgia are functionally identical to warrants in other contexts

Plaintiff's Fourth Amendment claim does not hinge on the fact that the warrant at issue was merely called a warrant. The warrant that caused Plaintiff's 104 day seizure is functionally identical to any other arrest warrant. *See generally* Doc. 15-6. Defendants are POST certified law enforcement officers. Doc. 15-5. The warrant has a header that reads: "**AFFIDAVIT AND WARRANT FOR ARREST OF PROBATIONER**." It then contains Defendant Florence's sworn testimony in the form of her warrant application. It alleges that Plaintiff breached two conditions of probation, which it is undisputed for purposes of this appeal constituted *Franks* violations. Florence's testimony was made before a notary public and transmitted to a Superior Court Judge for signature. The court then found "[b]ased on the above affidavit," there was "probable cause" to believe Plaintiff violated his probation. As a result, the warrant for Plaintiff's arrest was issued, and eventually Plaintiff was arrested for the sole reason that there was a warrant.

This warrant falls within the ambit of the Fourth Amendment because it at

---

prosecution framework); *Beck v. City of Muskogee Police Dep't*, 195 F.3d 553, 560 (10th Cir. 1999) (allowing malicious prosecution for dismissed criminal charge to proceed, but noting that pending probation revocation matter rendered malicious prosecution claim for probation revocation premature).

least purported be based "upon probable cause" and it was "supported by Oath or affirmation." It also contained "the indispensable condition that the inferences from the facts which lead to the complaint be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime." *Mancusi v. DeForte*, 392 U.S. 364, 371 (1968) (alterations adopted) (citations omitted); *see also* O.C.G.A. § 42-8-38(a) ("Any officer authorized by law to issue warrants may issue a warrant for the arrest of the probationer upon the affidavit of one having knowledge of the alleged violation, returnable forthwith before the court . . . ."); Black's Law Dictionary, "arrest warrant" (11th ed. 2019) ((1894) "A warrant issued by a disinterested magistrate after a showing of probable cause, directing a law-enforcement officer to arrest and take a person into custody.").

The warrant that caused Plaintiff's extended seizure bears the essential elements of any other warrant. Defendants have provided no argument that this warrant should be treated different than any other warrant. Because it was issued, and continued, with intentional and reckless falsehoods, Defendants may be held liable.

None of the cases that Defendants cite in support of their proffered no-liability rule hold that a probation violation warrant is outside of the Fourth Amendment. Plaintiff's position is that a warrant is a warrant, and that all warrants are governed

by the Fourth Amendment. That part of the Constitution provides that "no Warrants" shall issue without probable cause. It does not state that some warrants might be allowed without justification so long as they allege a probation violation. Similarly, the Fourth Amendment provides that "[t]he right of the people to be secure in their persons . . . against unreasonable . . . seizures, shall not be violated." Again, there is no justification-less seizure permitted so long as probation is alleged to be implicated. No court has held that a warrant application that intentionally or recklessly falsely alleges a probation violation is outside the ambit of the Fourth Amendment. And no court has held that a probationer can be arrested and held indefinitely for no reason at all. This Court should decline Defendants' invitation to be the first to do so.

Instead, each of the cases Defendants cites deals with the procedural differences between a probation revocation proceeding and a full-blown criminal trial. These cases are not instructive where Plaintiff's claim is based on a warrant-based seizure that is squarely governed by the Fourth Amendment. Defendants' motion for summary judgment as to Plaintiff's Fourth Amendment was properly denied as to Defendants Florence and Milton.

## II. QUALIFIED IMMUNITY WAS PROPERLY DENIED WHERE THE PRECISE CONDUCT AT ISSUE HAD LONG BEEN UNLAWFUL

This rule at issue is really quite simple: a government official cannot intentionally or recklessly lie to a judge in order to jail someone for a long time. No

reasonable American official would need a published decision to tell them that. But there are many such cases. *See, e.g.*, *Williams v. Aguirre*, 965 F.3d 1147, 1169 (11th Cir. 2020). This Court has "never wavered about the prohibition of misstatements in warrant applications." *Id.*

Any ambiguity about whether a probation revocation proceeding is a criminal proceeding for malicious prosecution purposes is irrelevant where it has long been clearly established that law enforcement may not provide intentionally or recklessly false information to obtain a warrant. Because this precise conduct—culpably false statements in warrants leading to extended seizures—has long been prohibited, any "unsettled" questions or "doctrinal tensions" about "the relationship between Fourth Amendment violations and malicious prosecution" simply do not matter. *Id.*; *see also Al-Amin v. Smith*, 511 F.3d 1317, 1335 (11th Cir. 2008) (holding that "defendants have 'fair warning' when reasonable officials know that their precise conduct . . . is unlawful and a constitutional violation," even if a reasonable official cannot "cite by chapter and verse all of the constitutional bases that make his conduct unlawful").

Defendants testified that they were subjectively aware of the prohibition on providing false information to obtain a warrant for the arrest of compliant probationers. Florence Dep. 24:18–22; Milton Dep. 12:8–12. Both also testified that

they knew that had to be truthful in warrant applications. Florence Dep. 22:4–6; Milton Dep. 11:6–10.

"Qualified immunity 'operates to protect officers from sometimes hazy border[s]' of constitutional rules." *Bailey v. Swindell*, 940 F.3d 1295, 1303 (11th Cir. 2019) (alteration in original) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004)). Here, Defendants' have conceded for summary judgment purposes that they made intentional and recklessly false statements to judges to jail Plaintiff for a long time for something they knew he did not do. That conduct "crossed a constitutional line that—far from being hazy—was 'not only firm but also bright.'" *See id.* (citation omitted). Qualified immunity is not appropriate on these facts at this time.

## III. IF THE FOURTH AMENDMENT IS NOT THE HOME FOR THIS CLAIM, THE DISTRICT COURT ERRED IN DISMISSING THE EIGHTH AND FOURTEENTH AMENDMENT CLAIMS

Beyond the Fourth Amendment, Plaintiff's complaint also alleged that his seizure was unlawful under the Eighth and Fourteenth Amendments. *See* Doc. 1 at ¶¶ 2, 7, 10. To the extent the Fourth Amendment does not apply, Plaintiff respectfully submits that the Eighth and Fourteenth Amendments may provide the proper rubric with which to analyze Plaintiff's claim.

Wrongful detention of a convicted person violates the Eighth Amendment's prohibition on cruel and unusual punishment. *McCurry v. Moore*, 242 F. Supp. 2d 1167, 1180 (N.D. Fla. 2002) (collecting cases putting overdetention in the Eighth

Amendment rubric). To succeed on such a claim, a plaintiff must show that the defendant acted with "deliberate indifference." Plaintiff's complaint alleged such deliberate indifference when Defendants ignored that Plaintiff was entitled to his liberty because Florence and Milton knew that Plaintiff was in full compliance with the terms of his probation but caused him to be arrested. Doc. 1 ¶ 48.

Similarly, the Fourteenth Amendment proscribes deliberate indifference to a person's liberty when a person is entitled to release. *West v. Tillman*, 496 F.3d 1321, 1327 (11th Cir. 2007) (reviewing continued detention beyond proper release date for potential Fourteenth Amendment due process violation); *Cannon v. Macon Cty.*, 1 F.3d 1558, 1564 (11th Cir. 1993) (prison official's failure to investigate detainee's claims of misidentification violated the plaintiff's due process rights); *Sosa v. Martin Cnty., Fla.*, 57 F.4th 1297, 1303 (11th Cir. 2023) (en banc) (overdetention longer than three days may give rise to due process claim). And finally, the Fourteenth Amendment also prohibits conduct that furthers no government interest and shocks the conscience. *County of Sacramento v. Lewis*, 523 U.S. 833 (1998). Plaintiff alleged that by causing him to be detained for 104 days when they knew he was entitled to release, Defendants' actions were improper and shocked the conscience. Doc. 1 ¶ 49.

To the extent Plaintiff's warrant-based seizure claim is not analyzed under the Fourth Amendment, this Court should vacate the summary judgment order and

remand for consideration of the claims under the rubric the Court finds appropriate.[17]

## **CONCLUSION**

The district court properly denied summary judgment on Plaintiff's Fourth Amendment claim as to Defendants Florence and Milton. That decision should be affirmed.

Respectfully submitted this 25th day of September, 2023.

/s/Zack Greenamyre
Zack Greenamyre
Georgia Bar No. 293002

Mitchell Shapiro Greenamyre & Funt, LLP
881 Piedmont Avenue
Atlanta, Georgia 30309
Phone: 404-812-4747
Fax: 404-812-4740
zack@mitchellshapiro.com

---

[17] Plaintiff was unable to appeal from the grant of Defendants' motion for summary judgment as to his Eighth and Fourteenth Amendment claims because there was no final order. *See* 28 U.S.C. § 1291. Similarly, no exception to the final order rule permitted an interlocutory appeal where the constitutional provisions at issue were distinct and thus the issues were not "inextricably intertwined." *Hudson v. Hall*, 231 F.3d 1289, 1294 (11th Cir. 2000).

<u>**CERTIFICATE OF COMPLIANCE**</u>

Undersigned counsel certifies that this document complies with the 13,000 word limitation of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 7,780 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared in a proportionally spaced typeface in 14-point Times New Roman font. The brief was prepared using Microsoft Word.

This 25th day of September, 2023.

<u>/s/Zack Greenamyre</u>
Zack Greenamyre
Georgia Bar No. 293002

## <u>CERTIFICATE OF SERVICE</u>

I certify that on this date I served the foregoing document by electronically filing with the CM/ECF system, which constitutes service upon attorneys of record under 11th Cir. Doc. 25-3(a).

This 25th day of September, 2023.

<u>/s/Zack Greenamyre</u>
Zack Greenamyre
Georgia Bar No. 293002